Kent HIZER and Elizabeth Hizer,
Appellants–Plaintiffs,

v.

James HOLT and Rebecca Holt,
Appellees–Defendants.

No. 71A03–1002–PL–127.

Court of Appeals of Indiana.

Oct. 27, 2010.

Steven L. Eslinger, South Bend, IN, Attorney for Appellants.

Wendy K. Walker–Dyes, Baker & Daniels LLP, South Bend, IN, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

Kent and Elizabeth Hizer ("the Hizers") appeal the trial court's grant of summary

judgment in favor of James and Rebecca Holt ("the Holts") on the Hizers' claims for fraud and breach of contract arising from the Hizers' purchase of the Holts' home. Concluding that a genuine issue of material fact exists as to whether the Holts made fraudulent misrepresentations on the Sales Disclosure Form required by statute, we reverse the trial court's entry of summary judgment in favor of the Holts and remand for proceedings consistent with this opinion.

### Facts and Procedural History

The Holts built and owned a home in Mishawaka, Indiana. In 2008, they put the home up for sale. In June 2008, the Hizers entered into an agreement with the Holts to purchase the home. In the agreement, the Hizers reserved the right to conduct an inspection of the property. Prior to closing, the Hizers hired an inspection of the septic system, the outside portion of the well, and a VA appraisal. However, they did not conduct an independent inspection of the home itself.

The Holts had received a prior offer to purchase their home, but the sale never closed. James Holt told the Hizers that the prior prospective purchasers had the home inspected, and the inspection revealed only that shut-off valves needed to be added to the water fixtures.

Prior to closing, the Hizers' realtor repeatedly asked the Holts to complete the Sales Disclosure Form required by Indiana Code section 32–21–5–7. The Holts did not do so prior to closing. At the July 30, 2008 closing, the Holts finally completed the form. On the form, the Holts stated that the plumbing and well were not defective, that there were no hazardous conditions on the property, including no mold, and that there were no moisture and/or water problems in the basement. The Holts disclosed only that the microwave oven and the ice maker in the refrigerator did not work.

Also, at closing, the Hizers asked James Holt about a stain on the rug in the basement. Holt told the Hizers that one of his children had spilled a drink on the rug. However, Rebecca Holt believed that the stain resulted from the sump pit overrunning with water causing water to back up on the carpet.

After the closing, the Hizers discovered several problems with the home, including a faulty irrigation system, an inoperable water holding tank internal to the home, the presence of extensive mold in the attic, polybutal water supply pipe throughout the house which was allegedly subject to recall, and a crack in the basement wall through which water was leaking into the house. A finished wall had been constructed over the crack, and it appeared that someone had attempted to patch the crack. The Hizers also discovered that someone had spread a sealant over the Styrofoam sheeting attached on the outside of the basement walls in the area underneath the deck.

The Hizers contacted James Johnson to obtain a quote for remediating the mold problem. Coincidentally, Johnson had inspected the home for the prior prospective purchasers in the sale that did not close. Johnson recalled the extensive mold from his prior inspection of the home. Johnson stated that he disclosed the presence of the mold and provided a quote for remediating the mold. He also disclosed the problem with the polybutal pipe. Finally, in his prior inspection report, Johnson did not find any water in the basement, but opined that the slope of the ground toward the house would likely cause water to flow toward the basement.

On July 2, 2009, the Hizers filed a complaint in St. Joseph Superior Court against the Holts alleging that the Holts had com-

mitted fraud in misrepresenting the condition of the house and breach of contract. The Holts moved to dismiss the Hizers' complaint. In response, the Hizers filed a "motion to convert or in alternative motion for partial summary judgment."[1] The court held a hearing on the pending motions on January 7, 2010. Shortly thereafter, the trial court issued an order denying the Hizers' partial motion for summary judgment. The court treated the Holts' motion to dismiss as a motion for summary judgment, and granted the motion in favor of the Holts. The Hizers now appeal.[2] Additional facts will be provided as necessary.

### Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). Our standard of review is well settled:

> In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper.

*Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind.Ct.App.2006) (citations omitted).

### Discussion and Decision

This case focuses our attention on the tension between the older, common law rule of *caveat emptor* regarding the relatively simple purchase of real estate and improvements thereon early in the history of the Hoosier State, and the comparative complexity of modern residential construction and the frequency with which homes are purchased and sold. Whereas in our state's early history buyers relied on their personal inspections of the real estate and improvements they proposed to purchase, the closing of modern, residential real estate transactions is often conditioned on resolution of issues disclosed by buyer-commissioned home inspections during the pendency of the transaction. Recognizing the importance of a full understanding of the condition of the home being sold to both the sellers and the prospective buyers, in 1993 our General Assembly enacted

---

1. In their brief, the Holts state that they "asked that the trial court grant the Holts' 12(B)(6) motion based on the pleadings and not consider matters outside the pleadings presented to the court by the Hizers. Nevertheless, the trial court treated the motion as one for summary judgment in its order, although it is not clear that the trial court considered matters outside the pleadings in making its decision." Appellee's Br. at 18. Yet, the Holts do not specifically argue that the trial court erred by treating the Hizers' motion as a motion for summary judgment. The Holts also note that they filed a motion to strike certain statements in the Hizers' designated affidavits, but the trial court did not explicitly rule on that motion. Again, the Holts do not specifically argue any error in the lack of a ruling on the motion to strike, but simply state "the Holts preserve on appeal all evidentiary objections presented." *Id. at 19.*

2. We heard oral argument in this case on September 28, 2010, at the Allen County Public Library in Fort Wayne, Indiana. We extend our thanks to the attending students and guests, library staff and the Volunteer Lawyer Program of Northeast Indiana for facilitating the program. We also commend counsel for the quality of their written and oral advocacy.

Indiana Code sections 24–4.6–2–1 to –13, which created a statutory obligation for sellers of certain real estate to complete forms informing prospective buyers of certain types of defects in the real estate and disclosing the known state of the integrity of major construction components and systems prior to closing. This legislation was later recodified at Indiana Code sections 32–21–5–1 to –13. It is the representations made by the Holts on these forms and the Hizers' failure to have the home's major construction components and systems independently inspected prior to closing that serves as the flashpoint of the parties' dispute before us.

Our courts have long held that a "purchaser has no right to rely upon the representations of the vendor as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities." *See Cagney v. Cuson*, 77 Ind. 494, 497 (1881); *see also Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind.Ct.App.2009); *Pennycuff v. Fetter*, 409 N.E.2d 1179, 1180 (Ind.Ct.App.1980). The earliest cases in this regard are from that time in our history when Indiana was almost exclusively an agrarian state, and pertain to the quality of farm land. But, as Indiana has become more urban, and residential real estate transactions have expanded to include many buyers who are unsophisticated in the techniques of home construction, our court has also stated,

> if a seller undertakes to disclose facts within his knowledge, he must disclose the whole truth without concealing material facts and without doing anything to prevent the other party from making a thorough inspection. For, if in addition to his silence, there is any behavior of the seller which points affirmatively to a suppression of the truth or to a withdrawal or distraction of the other

parties' attention to the facts, the concealment becomes fraudulent.

*Ind. Bank & Trust Co. of Martinsville, Ind. v. Perry*, 467 N.E.2d 428, 431 (Ind.Ct. App.1984). *See also Lyons v. McDonald*, 501 N.E.2d 1079 (Ind.Ct.App.1986); *Vetor v. Shockey*, 414 N.E.2d 575, 577 (Ind.Ct. App.1980) ("As for defects known to the vendor of an older home at the time of sale, the tort theories of misrepresentation or fraudulent concealment are alternatives open to the unknowing buyer.").

■ Pursuant to Indiana Code section 32–21–5–7(1) (2002 & Supp.2009), sellers of certain residential real estate are required to provide prospective buyers with a form adopted by the Indiana real estate commission disclosing known conditions of the property's

(A) The foundation.

(B) The mechanical systems.

(C) The roof.

(D) The structure.

(E) The water and sewer systems.

(F) Additions that may require improvements to the sewage disposal system.

(G) Other areas that the Indiana real estate commission determines are appropriate.

"In other words, this statute requires disclosure of the kinds of defects that will most significantly affect the value and use of a home." *Dickerson*, 904 N.E.2d at 717 (Vaidik, J., dissenting).

Section 32–21–5–7(2) also provides that the form must provide a notice to the prospective buyer that contains "substantially the following language: 'The prospective buyer and the owner may wish to obtain professional advice or inspections of the property and provide for appropriate provisions in a contract between them concerning any advice, inspections, defects, or warranties obtained on the property.' " Moreover, section 32–21–5–9 warns that

the "disclosure form is not a warranty by the owner or the owner's agent, if any, and the disclosure form may not be used as a substitute for any inspections or warranties that the prospective buyer or owner may later obtain."

Finally, Indiana Code section 32–21–5–11 provides:

The owner *is not liable* for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if:

(1) the error, inaccuracy, or omission was not within the actual knowledge of the owner or was based on information provided by a public agency or by another person with a professional license or special knowledge who provided a written or oral report or opinion that the owner reasonably believed to be correct; and

(2) the owner was not negligent in obtaining information from a third party and transmitting the information.

I.C. § 32–21–5–11 (2002) (emphasis added).

Relying on Indiana Code chapter 32–21–5, the Hizers argue that the Holts should be held liable for fraud for fraudulent statements made on the Sales Disclosure Form required by Indiana Code section 32–21–5–7. In response, the Holts argue that the Hizers "had no right to rely on representations by the Holts because the Hizers had a reasonable opportunity to inspect the property, and an inspection would have revealed the alleged defects." Appellee's Br. at 7.

■ To establish a cause of action for fraudulent misrepresentation, the Hizers must demonstrate that 1) the Holts made false statements of past or existing material facts; 2) the Holts made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; 3) the Holts made the statements to induce the Hizers to act upon them; 4) the Hizers justifiably relied and acted upon the statements; and 5) the Hizers suffered injury. *Dickerson*, 904 N.E.2d at 715 (citing *Verrall v. Machura*, 810 N.E.2d 1159, 1162 (Ind.Ct.App.2004), *trans. denied* ).

In *Verrall v. Machura*, the Sellers' actual knowledge of water leakage into a basement was the central issue. In that case, when the Sellers first purchased the home they discovered substantial water leakage throughout the basement and sued the previous owners. The amount and severity of the water seepage eventually subsided and the sellers remodeled the basement. The Sellers later put the house up for sale and completed the Sales Disclosure Form stating that there were moisture and/or water problems in the basement. However, the Sellers clarified that statement with the following: "During heavy rainfall, possible light seepage in SE/SW corner of basement." 810 N.E.2d at 1161. The Buyers who purchased the home eventually waived their right to inspect and accepted the property "as is."

Shortly after closing, the basement flooded on two occasions. While repairing the water damage, the Buyers removed a pegboard wall covering and discovered a crack in the basement wall. The Buyers sued the Sellers alleging that the Sellers materially misrepresented the nature and extent of the alleged water intrusion in the basement and the existence of the alleged structural damage to the basement wall. The Sellers moved for summary judgment, and the motion was denied. Our court affirmed that denial in part,[3] and stated:

3. However, we concluded that summary judgment was improperly denied on the Buyers'

In order to prevail on summary judgment, Sellers were required to show that there was no material question of fact regarding their knowledge of the extent of water leakage at the time the Disclosure Form was completed. We are unable to say that the evidence designated by Sellers provides this definitive showing, especially in light of the past undisclosed water leakage in the home leading to a lawsuit against the [previous owners] and the extensive remodeling Sellers undertook after the water seepage allegedly subsided. A fact-finder is required to resolve the parties' differing versions of the truth at trial and summary judgment was properly denied on the issue of water seepage.

Similarly, an issue of fact exists regarding the structural defect in the west wall of the basement. While Sellers assert they had no cause to remove the pegboard from the wall and discover the defect, the question again is one of actual knowledge of the defect.... As such, summary judgment was properly denied.

*Id.* at 1164. *See also McCutchan v. Blanck,* 846 N.E.2d 256 (Ind.Ct.App.2006); *Reum v. Mercer,* 817 N.E.2d 1267 (Ind.Ct. App.2004) (holding that buyers must prove the sellers actual knowledge of the defect at the time the disclosure form is completed); *Kashman v. Haas,* 766 N.E.2d 417 (Ind.Ct.App.2002).

The Holts rely on our court's more recent opinion in *Dickerson* to argue that they may not be held liable for any alleged fraudulent statements made on the Sales Disclosure Form. In that case, a termite inspection of the home prior to closing revealed termite damage to the sill plates, and the Sellers had caused the damage to

claims concerning a fireplace and a sump pump because the Buyers had not designated any evidence tending to establish fraudulent

be repaired by putting " 'four by four supports under those walls to try to help keep them from moving downward, like collapsing because of the weak perimeter joist.' " 904 N.E.2d at 713 (record citation omitted). The Buyers did not have the home independently inspected. Prior to closing the Sellers signed the Sales Disclosure Form on which they stated there were no structural problems with the home.

Three years later, the Buyers discovered significant termite damage while replacing the siding on the house. Specifically, " 'the sill around the majority of the building had been completely destroyed by termite damage.' " *Id.* at 714 (record citation omitted). The Buyers' contractor believed that the damage had occurred prior to their purchase of the home. The Sellers' contractor, who made repairs prior to the closing, stated that he had never been given the termite inspection report and was not told to reinforce or replace beams or joints. The Buyers presented evidence that the area had not been repaired but had simply been propped up to prevent immediate collapse while leaving the structural failure in place. *Id.*

The Buyers sued the Sellers for fraud. Relying on the rule announced by our supreme court in 1881 in *Cagney v. Cuson,* the *Dickerson* court observed that "*even as to fraudulent representations* operating as an inducement to the sale or exchange of property, 'the purchaser has no right to rely upon the representations of the vender as to the quality of the property, where he has a reasonable opportunity of examining the property and judging for himself as to its qualities.' " *Id.* at 715 (quoting *Cagney,* 77 Ind. at 497) (emphasis added). Accordingly, the *Dickerson* court

misrepresentation on those claims. *Id.* at 1164.

held that because the Buyers had the opportunity to inspect the home, the Sellers could not be held liable for fraud in misrepresenting the quality of the property.[4]

However, the *Dickerson* majority did not address the effect that the enactment of Indiana Code chapter 32–21–5 might have on our supreme court's 1881 *Cagney* decision, the import of which is squarely before us here. In her dissenting opinion, Judge Vaidik considered the Sales Disclosure Form statutes and concluded that our General Assembly "expressly contemplated that the disclosure form statute would create liability for sellers under certain circumstances[.]" *Dickerson*, 904 N.E.2d at 717 (citing I.C. § 32–21–5–11) (Vaidik, J., dissenting). Judge Vaidik argued that "Indiana's disclosure form statute abrogates the common law rule that buyers cannot rely upon sellers' representations regarding the absence of defects in those things included in Indiana Code [section] 32–21–5–7(1) and places the onus on the seller to refrain from knowingly making misrepresentations about those conditions." *Id.*

■ Similarly, the Hizers argue that by enacting chapter 32–21–5, the General Assembly must have intended to "supersede the caveat emptor doctrine at least as it pertains to the improvements on residential real estate." Appellant's Br. at 15. It is a "basic tenet of statutory construction that we will strive to avoid a construction that renders any part of the statute meaningless or superfluous." *Vanderburgh County Election Bd. v. Vanderburgh County Democratic Cent. Comm.*, 833 N.E.2d 508, 511 (Ind.Ct.App.2005).

We cannot conceive of any reason that the General Assembly would require sellers to complete the Sales Disclosure Form if sellers cannot be held liable for fraudulently misrepresenting the condition of the property on the form. Importantly, sellers "must complete and sign a disclosure form and submit the form to the prospective buyer before an offer for the sale of the residential real estate is accepted." I.C. § 32–21–5–10. We believe that the General Assembly intended for a prospective buyer to rely on the seller's disclosure of known defects on the property when making his or her offer to purchase the property.

■ Furthermore, section 32–21–5–11 provides that sellers are not liable for errors, inaccuracies or omissions on the Sales Disclosure Form under certain, limited circumstances, including a lack of actual knowledge of the defect. By implication, therefore, the General Assembly contemplated that sellers can be held liable for errors, inaccuracies, or omissions on the Sales Disclosure Form if the seller has actual knowledge of the defect. For all of these reasons, we conclude that Indiana Code chapter 32–21–5 abrogates any interpretation of the common law that might allow sellers to make written misrepresentations with impunity regarding the items that must be disclosed to the buyer on the Sales Disclosure Form pursuant to section 32–21–5–7(1). Moreover, we disagree with our court's conclusion in *Dickerson* and hold that a seller may be held liable for fraudulent misrepresentations made on the Sales Disclosure Form if the buyer can prove the seller's

4. In a footnote, however, the *Dickerson* court stated, "We might have reached a different result if the Dickersons had directed us to evidence tending to show that a reasonable inspection of the house would not have revealed the termite damage in question." In that opinion, the court "encourage[d] our supreme court to reevaluate the social value of a rule allowing a seller of a property to lie with impunity as long as the prospective buyer had a reasonable opportunity to inspect the property." 904 N.E.2d at 715–16, n. 4.

actual knowledge of the defect at the time the form is completed. *See Reum,* 817 N.E.2d at 1273–74; *Verrall,* 810 N.E.2d at 1164.

■ In this case, the Hizers designated evidence to establish a genuine issue of material fact at least as to whether the Holts had actual knowledge of the defects in the basement wall, the water problems in the basement, the inoperable well, and the faulty irrigation system, all of which were listed as "not defective" on the Sales Disclosure Form. Also, there is a genuine issue of material fact as to whether the Holts had actual knowledge of the presence of extensive mold in the attic and therefore fraudulently stated on the Sales Disclosure Form that there was no mold on the property. For all of these reasons, the trial court erred when it entered summary judgment in favor of the Holts, and we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded for proceedings consistent with this opinion.

MAY, J., and BROWN, J., concur.