**In the Matter of Supervised ESTATE OF Dora G. LEE, Deceased**

**Corrine R. Finnerty, as Successor Personal Representative of the Estate of Dora Grace Lee, deceased, Appellant,**

v.

**Joseph A. Colussi and the Colussi Law Office, Appellees.**

**No. 39A01–1011–ES–622.**

Court of Appeals of Indiana.

Sept. 23, 2011.

Rehearing Denied Nov. 29, 2011.

Scott A. Weathers, Travis W. Montgomery, The Weathers Law Office, P.C., Indianapolis, IN, Attorneys for Appellant.

Mark D. Gerth, Michael E. Brown, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Corrine R. Finnerty ("Finnerty"), as successor personal representative of the estate of Dora Grace Lee ("the Estate"), appeals from the trial court's entry of summary judgment in favor of attorney Joseph A. Colussi and The Colussi Law Office (collectively, "Colussi") on the Estate's legal malpractice claim and Colussi's counterclaim for unpaid attorney fees. On appeal, the Estate argues that genuine issues of material fact preclude summary judgment in Colussi's favor. Concluding that such genuine issues of material fact exist and preclude summary judgment in Colussi's favor, we reverse and remand for proceedings consistent with this opinion.

### Facts and Procedural History

The facts most favorable to the Estate as the non-moving party establish that Dora Grace Lee ("Lee") died testate on January 3, 2007. In her will, Lee designated her sister, Helen Ricketts ("Ricketts") and her granddaughter, Christina Mason ("Mason"), as co-personal representatives. Ricketts and Mason chose Colussi to serve as the Estate's counsel, and Colussi prepared and filed the necessary pleadings to open the Estate. The will was admitted to probate on February 2, 2007, and letters testamentary were issued to Ricketts and Mason.

On February 6, 2007, Colussi mailed Mason and Ricketts their letters testamentary along with copies of the trial court's order appointing them as co-personal representatives of the Estate. The documents were accompanied by letters to Mason and Ricketts informing them that either document would allow them to conduct business for the Estate. Additionally, the letter to Mason instructed her to "immediately open up an estate account and handle all expenses and deposit all income in that account" and to forward a check to Colussi to reimburse him for the Estate's filing fee. Appellant's App. p. 86. The letter to Ricketts made no mention of a bank account or filing fee. Colussi had previously advised Mason and Ricketts that either of them could write checks on the Estate account, and it was agreed that Mason would retain the Estate's checkbook. *Id.* at 127, 129. Ricketts apparently believed it would be more convenient for Mason to control the account because Ricketts lived in Plainfield, whereas Mason lived in Madison, where Lee had lived prior to her death and the bulk of the Estate's assets were located.

Thereafter, Mason and Ricketts went to Main Source Bank in Madison to open an account for the Estate. The account was opened as an "or" account, which permitted either co-personal representative to sign checks, rather than an "and" account, which would require signatures from both co-personal representatives. Only Mason received a checkbook and monthly account statements from the bank.

Over the next several months, Ricketts and Mason liquidated the Estate's assets and deposited approximately $236,000 into the account. However, unbeknownst to Ricketts and Colussi, Mason began writing checks on the Estate account for her personal use, the use of her family and in-laws, and the use of the three other beneficiaries of the will. The majority of the Estate funds were depleted by September 11, 2007.

On October 31, 2007, after hearing from a family member that Mason had misused the funds in the Estate account, Ricketts contacted Colussi and told him that she

suspected that there were problems with the account. Colussi advised Ricketts to check the account and inform him of any irregularities. Ricketts then contacted the bank and learned that the Estate account was overdrawn. Colussi and Ricketts then reported Mason's embezzlement to the police and began pursuing recovery of assets purchased with Estate funds. Thereafter, Mason and Ricketts both resigned as co-personal representatives of the Estate, Colussi withdrew from representation of the Estate, and Finnerty was appointed successor personal representative.

On February 25, 2009, the Estate filed a complaint against Colussi alleging that he had committed legal malpractice by failing "to inform himself as to the status of Estate assets or monitor their use." Appellant's App. p. 8. Colussi filed his answer on March 19, 2009, along with a counterclaim to recover unpaid attorney fees from the Estate. Colussi filed a motion for summary judgment on September 17, 2010, alleging that he had no duty to monitor the Estate bank account and that he was entitled to receive attorney fees for his representation of the Estate. The Estate filed its opposition to Colussi's motion and designated the deposition testimony of expert Thomas C. Bigley, Jr. ("Bigley"), who opined that Colussi breached the applicable standard of care by failing to control or monitor the Estate checking account. After holding a hearing, the trial court granted Colussi's motion for summary judgment on December 1, 2010. The Estate now appeals.

**Standard of Review**

■ This cause comes before this court as an appeal from a granted motion for summary judgment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's summary judgment ruling, we stand in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind.Ct.App.2008), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608. Even if it appears that the non-moving party will be unsuccessful at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. *Oxley v. Lenn*, 819 N.E.2d 851, 856 (Ind.Ct.App.2004). Summary judgment is rarely appropriate in negligence cases because such cases are particularly fact-sensitive and are governed by an objective, reasonable-person standard, which is best applied by a jury after hearing all of the evidence. *Id.* at 856–57.

Nevertheless, the party appealing summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Hizer v. Holt*, 937 N.E.2d 1, 3 (Ind.Ct.App.2010) (citing *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind.Ct.App.2006)). Where, as here, the trial court makes findings and conclusions in support of its entry of summary judgment, we are not bound by such findings and conclusions, but they aid our review by providing reasons for the trial court's decision. *Hochstetler Living Trust v. Friends of Pumpkinvine Nature Trail, Inc.*, 947 N.E.2d 928, 930 (Ind.Ct.App. 2011). If the entry of summary judgment can be sustained on any theory supported by the record, we will affirm. *Id.*

**I. The Estate's Malpractice Claim**

■■ The Estate argues that the trial court erred in granting summary judg-

ment in Colussi's favor on the Estate's legal malpractice claim. The elements of legal malpractice are as follows: "(1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Clary v. Lite Machs. Corp.*, 850 N.E.2d 423, 430 (Ind.Ct.App.2006). A defendant is entitled to summary judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim. *Id.*

In entering summary judgment in Colussi's favor, the trial court made the following findings and conclusions:

> 2. *In this case it is undisputed Colussi was retained to open an estate but whether being so retained includes, by operation of law, a duty to monitor the estate bank account must be determined.*
>
> 3. While expert testimony is appropriate in a legal malpractice case to determine if the defendant's actions fall below the Standard of Care application to a recognized duty, experts may not testify to conclusions of law. *Hacker v. Holland*, 570 N.E.2d 951, 953 (Ind.Ct.App. 1991) [, *trans. denied* ].
>
> 4. The testimony of Bigley and Finnerty as to their practice as attorneys in monitoring an estate bank account are simply their personal opinions based on their own experiences which renders their opinions as to Colussi's actions lacking foundation and inadmissible conclusions of law.
>
> 5. The Estate has presented no statutory or common law basis for requiring an attorney to maintain control over the estate bank account.
>
> 6. The Estate has presented no evidence of a uniform and accepted practice by attorneys practicing in the same locality as [Colussi] or in Indiana in general requiring an attorney to control an estate bank account.
>
> 7. The Estate has presented no evidence from which it could be determined that an attorney who is providing legal services to the personal representative of an estate is on notice of an obligation or duty to monitor the estate bank accounts.
>
> 8. *There is no duty to monitor an estate bank account imposed by the simple fact of accepting employment as an attorney for the personal representative of an estate.*[1]

Appellant's App. pp. 4–5 (emphases added).

The Estate argues that in reaching its conclusion that Colussi had no duty to monitor the Estate bank account, the trial court impermissibly conflated the issues of duty and breach. Specifically, the Estate argues that as the Estate's attorney, Colussi undoubtedly owed the Estate a duty to " 'use the degree of care and skill that a reasonably careful, skillful, and prudent attorney would use under the same or similar circumstances.' " Appellant's Br. at 8–9 (quoting Instruction 1703, *Indiana Model Civil Jury Instructions* (2010 Edition), prepared under the auspices of the Indiana Judges Association). According to the Estate, whether Colussi's failure to monitor or control the Estate bank account fell below the applicable standard of care is a question of breach rather than duty. We agree.

The existence of a duty is generally a question of law for the court to

---

1. The designated evidence most favorable to the Estate as the non-movant establishes that Colussi was hired to represent the Estate, not the co-personal representatives in their individual capacities. *See* Appellant's App. pp. 12, 29, 117.

decide. *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 466 (Ind.2003). Where an alleged duty is well established, there is no need for a judicial redetermination of duty. *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1053 (Ind.2003). Whether a particular act or omission amounts to a breach of an attorney's duty is generally a question of fact for the jury. *Oxley,* 819 N.E.2d at 856. However, breach can become a question of law where the facts are undisputed and only a single inference can be drawn therefrom. *Id.*

▬ It is undisputed that Colussi was employed as an attorney for the Estate. Thus, there is no question that Colussi owed a general duty to the Estate to exercise ordinary skill and knowledge as an attorney. *See Rice v. Strunk,* 670 N.E.2d 1280, 1283–84 (Ind.1996) (employment of an attorney creates a duty to exercise ordinary skill and knowledge); *accord Solnosky v. Goodwell,* 892 N.E.2d 174, 181 (Ind.Ct.App.2008); *Clary,* 850 N.E.2d at 430. Moreover, "[a]n attorney has the duty to protect and preserve the rights and property of his client." *Gilman v. Hohman,* 725 N.E.2d 425, 431 (Ind.Ct.App. 2000) (citing *Landau v. Bailey,* 629 N.E.2d 264, 266 (Ind.Ct.App.1994)), *trans. denied.* Whether Colussi's failure to monitor or control the Estate bank account amounted to a violation of his duty to the Estate is a question of breach.[2]

▬ Several of the trial court's findings and conclusions confuse the issues of duty and breach. For example, the trial

court concluded that Bigley's expert testimony did not preclude summary judgment because it was derived from his "personal opinions based on [his] own experiences which renders [his] opinions as to Colussi's actions lacking foundation and inadmissible conclusions of law." Appellant's App. p. 5. The trial court's statement that Bigley's testimony lacked foundation because it was based on his personal opinions and experiences is puzzling. Expert witnesses are permitted to testify as to their opinions, and personal experience is very often the source of a witness's expertise. *See* Ind. Evidence Rule 702 (providing "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise"). Neither the trial court nor Colussi disputes that Bigley possesses the requisite skill, knowledge, and experience to testify as an expert; therefore, his opinion is not "lacking in foundation."

▬ Moreover, although experts may not testify as to conclusions of law, such as the existence of a duty, expert witnesses are permitted to testify to the standard of practice within a given field. *See Sharp,* 790 N.E.2d at 466; *Hacker v. Holland,* 570 N.E.2d 951, 953 (Ind.Ct.App. 1991), *trans. denied.* Indeed, in legal malpractice actions, expert testimony is generally *required* to establish the applicable standard of care. *Hacker,* 570 N.E.2d at 953. Here, Bigley's deposition testimony did not relate to the existence of a duty to the Estate on Colussi's part; such duty

---

**2.** Colussi argues that the trial court correctly concluded that Colussi had no duty to monitor or control the Estate account because the Indiana Probate Code places a duty upon the personal representative to take possession of all real and personal property of the decedent and provides that a personal representative shall be liable for any embezzlement of estate assets. Appellee's Br. at 9 (citing Ind.Code §§ 29–1–13–1; 29–1–16–1 (2010)). But the fact that a personal representative has a duty

to take possession of an estate's assets does not necessarily preclude a conclusion that, under the applicable standard of care, the estate's attorney is required to monitor the personal representative's actions with regard to those assets. Likewise, the fact that a personal representative will be held liable for embezzlement of estate assets does not necessarily preclude a conclusion that an attorney could be held liable for his acts or omissions contributing to the loss.

was established by virtue of Colussi's employment as the Estate's attorney. Rather, Bigley testified for the purpose of establishing the applicable standard of care, and his testimony was admissible for that purpose.

Likewise, the trial court's focus on the Estate's alleged failure to establish the existence of a statutory or common law basis for requiring an attorney to control or monitor the Estate bank account is misguided. As we explained above, duty is a question of law, which may properly be resolved by resort to such sources of law. *See Sharp*, 790 N.E.2d at 466. Breach, however, is a question of fact to be determined by the jury based on the evidence. *Id.*

■ Having concluded that Colussi owed a duty to Estate to act with ordinary skill and knowledge as an attorney, we turn now to whether the designated evidentiary materials create a genuine issue of material fact regarding whether Colussi breached that duty. We first note that in order to prove legal malpractice, expert testimony is normally required to demonstrate the standard of care by which an attorney's conduct is measured. *Hacker*, 570 N.E.2d at 953. Here, the Estate designated the expert testimony of Bigley, who is a certified specialist in estate planning and administration and has more than forty years of experience in probate matters.[3] In his deposition, Bigley testified that the applicable standard of care requires an attorney for an estate to retain the estate's checkbook, thereby requiring the personal representative to come to the attorney's office to obtain checks. Bigley also testified that he "would have moni-

tored the opening paperwork [for the Estate account] a little more carefully than [Colussi] did" and that in his practice, he would have monthly bank statements for an estate account sent to his office. Appellant's App. p. 245. Bigley indicated that he believed that these actions are required of all lawyers doing estate work. *Id.* at 246.

In light of Bigley's testimony regarding the applicable standard of care and the procedural posture of this case as an appeal from a granted motion for summary judgment, we find the trial court's conclusions regarding the Estate's alleged failure to establish "a uniform and accepted practice by attorneys" requiring attorneys to control or monitor an estate bank account or that attorneys are on notice of such a requirement are irrelevant. Appellant's App. p. 5. In order to establish that Colussi breached his duty to the Estate, the Estate need only prove that Colussi's conduct fell below the applicable standard of care. *See Clary*, 850 N.E.2d at 430. While evidence of a uniform practice or common understanding would certainly aid the Estate in making such a showing, it is not required. Rather, the standard of care by which an attorney's conduct is measured may be established through the testimony of an expert witness, such as Bigley. *See Hacker*, 570 N.E.2d at 953.

Thus, based on Bigley's testimony, we must conclude that a genuine issue of material fact exists as to whether Colussi breached a duty owed to the Estate. Therefore, the trial court erred in granting summary judgment in favor of Colussi on the Estate's legal malpractice claim.

---

**3.** The Estate also designated the deposition testimony of Finnerty, who is also an attorney with extensive experience in estate and probate matters. Finnerty testified that "[her] firm and other attorneys with whom [she has] experience in these matters, generally, will get the ... estate account bank statements every month[.]" Appellant's App. p. 169. However, because it does not appear that Finnerty testified as an expert witness, we base our analysis on Bigley's expert testimony.

## II. Attorney Fees

Next, the Estate argues that the trial court erred in granting summary judgment in Colussi's favor on his counterclaim for unpaid attorney fees. In support of its argument, the Estate directs our attention to *Schultheis v. Franke*, 658 N.E.2d 932, 941 (Ind.Ct.App.1995), *trans. denied*, for the proposition that an attorney who renders services to a client and is thereafter sued for malpractice is only entitled to a deduction in the malpractice award equal to the reasonable value of his or her services on a theory of quantum meruit. According to the Estate, because a genuine issue of material fact exists as to whether Colussi is liable for malpractice, a genuine issue of material fact must necessarily exist with regard to Colussi's counterclaim for unpaid attorney fees.

In *Schultheis*, another panel of this court held that

> an attorney who renders services for a client and is thereafter sued for malpractice is entitled to a deduction in the malpractice award equal to the reasonable value of his or her services on a theory of quantum meruit. This approach will avoid a windfall to the client where the attorney has provided services beneficial to the client. Conversely, a client will not be forced to pay twice for the same services because counsel in the legal malpractice action presumably will prove only those portions of the underlying case that were not already completed by the negligent attorney. Nor will the negligent attorney be rewarded for his or her shoddy workmanship as fees will be deducted only for legal services which actually benefited the client.

*Id.*

Thus, if the Estate prevails in its legal malpractice claim, Colussi will only be entitled to recovery on a theory of quantum meruit. Because we have concluded that a genuine issue of material fact precludes summary judgment on the Estate's legal malpractice claim, we must conclude that a genuine issue of material fact exists as to whether Colussi is entitled to receive the full amount of his fee or if he is limited to a deduction in the malpractice award based on quantum meruit.

Moreover, to prevail on a theory of quantum meruit—also referred to as unjust enrichment—Colussi must establish that his services conferred a measurable benefit upon the Estate under such circumstances that the Estate's retention of the benefit would be unjust. *See King v. Terry*, 805 N.E.2d 397, 400 (Ind.Ct.App. 2004). Based on the facts and circumstances of this case, we also conclude that a genuine issue of material fact exists as to whether the Estate's retention of a portion of the benefit of Colussi's services would be unjust.

Here, Colussi is seeking recovery not only for his services relating to opening and administering the estate, but also for time he spent investigating Mason's embezzlement and seeking recovery of misappropriated assets. But if the jury concludes that Colussi breached his duty to the Estate by failing to monitor or control the Estate bank account and that this breach was a proximate cause of the Estate's losses, the fees relating to Colussi's investigation of Mason's embezzlement and his efforts to recover the Estate's assets would be attributable to Colussi's own negligence. Put differently, if Colussi committed malpractice by failing to prevent Mason's embezzlement, then the fees relating to Colussi's investigation and recovery of embezzled assets would not have been incurred but for Colussi's negligence. Indeed, Colussi initially estimated that his total fee would be between $3,000 and $4,000, but due to additional hours Colussi dedicated to unraveling Mason's miscon-

duct, the total fee came over $6,000. Appellant's App. p. 64. Under these facts and circumstances, it is for the jury to determine whether the Estate's retention of this portion of the benefit conferred by Colussi would be unjust and therefore support recovery on a theory of quantum meruit.

For all of these reasons, we conclude that the trial court erred in granting summary judgment in Colussi's favor on his counterclaim for unpaid attorney fees.

### Conclusion

The trial court erred in granting summary judgment in Colussi's favor on the Estate's claim for legal malpractice and on Colussi's counterclaim for unpaid attorney fees.

Reversed and remanded for proceedings consistent with this opinion.

KIRSCH, J., and VAIDIK, J., concur.