**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Oct 10 2012, 9:17 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**BRIANE M. HOUSE**
**PETER A. SCHROEDER**
Norris Choplin Schroder LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
JOHN C. ECKERT:

**STEVEN M. BADGER**
**JONATHON W. HUGHES**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
WILMER E. GOERING, II, AND
ALCORN, GOERING & SAGE, LLP:

**DEBORAH A. KAPITAN**
Kopka, Pinkus, Dolin & Eads, LLC
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GRANDVIEW MEMORIAL GARDENS, LLC, KEITH MEFFORD, BRITTAN MEFFORD, RICHARD EBLEN and SHERRY EBLEN, | ) ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 49A02-1111-PL-992 |
| JOHN C. ECKERT, WILMER E. GOERING, II, and ALCORN GOERING & SAGE, LLP, | ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1010-PL-43102

**October 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

A former client sued several of his lawyers and their firms for conflict of interest and malpractice in connection with his purchase of a cemetery. The trial court decided that the statute of limitation had run before the complaint was filed. We conclude that the court was right as to conflict claims about which the client was well aware long before the filing. As for certain malpractice claims against a second lawyer and his firm, we think that summary judgment was inappropriate.[1]

## FACTS AND PROCEDURAL HISTORY

Because this appeal focuses on whether the statute of limitation ran before the case was filed, the details of who did what and said what, and when, must necessarily be laid out in some detail.

In 2005, Keith Mefford, who sold pre-need funeral packages for a living, decided to buy a cemetery in Madison, Indiana, known as Grandview Memorial Gardens. He hired attorney John C. Eckert, who was then a partner with Eckert, Alcorn, Goering, and Sage, to advise him in completing the transaction.

Keith formed Grandview Memorial Gardens LLC ("Grandview LLC") with Eckert's assistance. The LLC's members consisted of Keith, his wife Brittan, and his wife's parents Richard and Sherry Eblen. Eckert also assisted Keith in negotiations to

---

[1] We held oral argument on August 28, 2012, in Indianapolis. We thank the parties for their helpful presentations.

buy the cemetery, and the sale closed in July 2005. The cemetery maintained trust accounts, and Keith gained access to the accounts when he took ownership, though the accounts continued to be held in the name of the cemetery's seller, Madison Funeral Service ("MFS").

In the months following the purchase, Keith had trouble obtaining payments from the trust accounts and determined that they contained insufficient funds to meet the cemetery's needs. He also discovered that the cemetery had serious drainage problems that caused water to accumulate in lawn crypts. Grandview LLC informed MFS that it would cease making payments under the sale agreement until the problems were remedied. When Keith mentioned these problems to Eckert, Eckert determined that litigation might be necessary and referred Keith to his partner Wilmer Goering. On June 14, 2006, MFS sued Grandview LLC for failure to make payments under the sale agreement. A few days later, Grandview LLC, by Goering and his firm, filed a breach of contract claim against MFS.[2]

In July 2006, Keith held a public meeting at the cemetery to address the trust account shortages and drainage problems. Following the meeting, some individuals (including a few who had purchased plots or other pre-paid services) formed a group called the Grandview Volunteers to resolve the cemetery's problems.

Eckert thought that additional legal assistance might be required to address the trust account issues, so on September 27, 2006, Eckert, Goering, Keith, and Richard

---

[2] The results of these lawsuits have not been provided in the record.

Eblen met with Cohen & Malad lawyers Richard Shevitz and Vess Miller. Keith discussed the problems he had discovered at the cemetery. After this discussion, individuals who had purchased pre-paid services at the cemetery became aware of Cohen & Malad's involvement and hired that firm to investigate a lawsuit regarding shortages in the cemetery's trust accounts.

After Eckert ended his "of counsel" office sharing relationship with Alcorn Goering & Sage, he entered into a similar arrangement with J. Anthony Goebel in February 2007. Eckert discussed the drainage problems with Goebel, and upon Eckert's suggestion Goebel met with the Volunteers on March 17, 2007. The Volunteers subsequently hired Goebel to investigate a lawsuit with respect to drainage issues. Goebel determined that the case would be best pursued as a class action and asked attorney Stephen Pitt of Wyatt Tarrant & Combs, LLP ("WTC"), to assist with those aspects of the lawsuit.

On April 1, 2007, a fire at the cemetery destroyed its office building.[3] Grandview LLC filed a claim with its insurer. Keith consulted with Goering about the claim, and Goering "agreed to handle the matter" in addition to representing Grandview LLC in the other lawsuits. Appellants' App. p. 321. When the insurer requested a sworn statement from Keith, he consulted with Goering. Based on Goering's advice, he declined to provide a sworn statement.

---

[3] The State later charged four men, including Keith's father Gary Mefford, with setting the fire.

4

On April 13, 2007, Eckert hosted a meeting to discuss issues at the cemetery with Keith, Goebel, Pitt, representatives of the Volunteers, and others. Keith was under the impression that Goebel and Pitt were there to help Grandview LLC with the drainage problems and with insurance coverage issues for the fire. Consequently, Keith discussed the cemetery's problems with Goebel and Pitt.

Next, on April 20, 2007, Cohen & Malad filed a class action lawsuit, identified by the parties as the *Means* case, against Grandview LLC and others regarding the trust account shortages. Eckert called Keith shortly before the lawsuit was filed to inform him that Grandview LLC would be a defendant. Keith found the news a "shocking development." *Id.* at 87. Goering filed an appearance for Grandview LLC in the *Means* case. Appellees Goering and AGS's App. p. 132.

Subsequently, on August 17, 2007, Goebel filed a class action lawsuit on behalf of the Volunteers against Grandview LLC and others regarding the cemetery's drainage problems ("the *Leathermon* case"). Goebel listed Eckert's law firm name on the complaint as counsel for the Volunteers, though Eckert did not sign the complaint. Goebel called Keith to inform him that Grandview LLC was a defendant, and Keith was "shock[ed] and surprise[d]." Appellants' App. p. 100. Pitt later filed an appearance for the Volunteers. Goering represented Grandview LLC in the *Leathermon* case "for a brief time." Appellees Goering and AGS's App. p. 132.

Grandview LLC's insurer hired Richard Mullineaux of Kightlinger & Gray to represent Grandview LLC in *Leathermon*. Mullineaux concluded that Eckert, Goebel,

5

and Pitt had a conflict of interest. He called Eckert on October 12, 2007, to demand that Eckert and Goebel withdraw from the case. Eckert eventually did move to withdraw, but not until October 2008. On April 24, 2009, Grandview LLC filed a motion to disqualify Goebel, Pitt, and WTC, which the court granted on March 31, 2012.[4]

On March 25, 2009, Goering contacted the cemetery's insurer to ask about the fire claim. The insurer, through its attorney, told Goering that it had notified Keith and Richard Eblen in January 2008 that the claim would be denied unless they cooperated with the claims process. Goering told Keith that the insurer had denied coverage for the fire loss and that he "would look into it." Appellants' App. p. 321.

On October 1, 2010, the Meffords, the Eblens, and Grandview LLC (collectively, "the Grandview clients") sued just about all the lawyers and firms mentioned above, alleging legal malpractice, constructive fraud, and breach of fiduciary duty.[5] The present appeal stems from the trial court's grant of summary judgment to Eckert, Goering and AGS, and Goebel on statute of limitation grounds. The trial court determined that the Grandview clients were aware of any conflict of interest "by mid 2007," so the statute of limitation barred their claims against all defendants.[6] *Id.* at 17.

---

[4] The outcomes of the *Means* and *Leathermon* cases have not been included in the record.

[5] Pitt, WTC, Shevitz, Miller, and Cohen & Malad were eventually dismissed from the suit.

[6] After the trial court issued its judgment, the parties negotiated a release as to Goebel. Therefore, he is not participating in this appeal. Appellants' App. p. 3.

ISSUE

The Grandview clients' issue on appeal is thus: whether the trial court erred in granting summary judgment to Eckert, Goering, and AGS.

DISCUSSION

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). As with a trial court, a reviewing court construes all factual inferences in favor of the nonmoving party and resolves all doubts as to the existence of a material issue against the moving party. *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267 (Ind. 2009). An appellate court may affirm summary judgment if it is proper on any basis shown in the record. *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. 2011).

Here, the Grandview clients acknowledged before the trial court that all of their claims are subject to a two-year statute of limitation. Appellants' App. p. 174 (citing Ind. Code § 34-11-2-4 (1998)). The key issue is determining when the two-year period began to run.

Statutes of limitation are enacted upon the presumption that one having a well-founded claim will not delay in enforcing it. *Shaum v. McClure*, 902 N.E.2d 853 (Ind. Ct. App. 2009), *trans. denied*. They are favored because they afford security against stale claims. *Id.* The determination of when a cause of action accrues is a question for the court. *Doe v. United Methodist Church*, 673 N.E.2d 839 (Ind. Ct. App. 1996), *trans. denied*. Under Indiana's discovery rule, a cause of action accrues, and the statute of

7

limitation begins to run, when a claimant knows or in the exercise of ordinary diligence should have known of the injury. *Pflanz v. Foster*, 888 N.E.2d 756 (Ind. 2008). For a cause of action to accrue, it is not necessary that the full extent of damage be known or even ascertainable, but only that some ascertainable damage has occurred. *Doe*, 673 N.E.2d at 842.

We address the Grandview clients' claims against Eckert separately from those against Goering and AGS.

## I. ECKERT: WHEN SHOULD THE CLIENT HAVE KNOWN?

The Grandview clients argue that the statute began to run on their claims against Eckert on October 2, 2008, when Eckert moved to withdraw his appearance on behalf of the Volunteers in the *Leathermon* case, and that their complaint, filed on October 1, 2010, was therefore timely. In response, Eckert says the Grandview clients were aware, or should have been aware, of Eckert's alleged malpractice no later than when attorney Mullineaux informed them of Eckert's conflict in October 2007.

We find guidance on this point in *Estate of Spry v. Batey*, 804 N.E.2d 250 (Ind. Ct. App. 2004), *trans. denied*. In that case, the Estate of Kelly Spry retained attorney Batey to represent it in connection with the one-car auto accident that claimed Spry's life. Batey, on behalf of the Estate, settled with the driver of the car, releasing the driver and all other parties from liability. A subsequent administrator sued the tavern at which Spry and the driver had been drinking on the night of the accident. The tavern argued that the release barred any claims against it. The Estate's attorneys in the tavern litigation

8

informed Batey about the release dispute and advised her to contact her insurer. In response, Batey gave the Estate her opinion as to why the release did not apply to the tavern. A month later, a court granted the tavern's motion for summary judgment based on the release, a judgment upheld on appeal.

The Estate sued Batey for malpractice with respect to the release, to which Batey responded that the statute of limitation barred the claim because the Estate was aware of the claim when it sent her a letter advising her to contact her insurer. The Estate responded that it was not aware of an injury until the tavern prevailed on summary judgment. The trial court granted Batey's motion for summary judgment. On appeal, this Court concluded: (1) the Estate had been damaged by the release, not by the grant of summary judgment to the tavern based on the release; and (2) the Estate was aware of the alleged malpractice no later than when the Estate's attorney warned Batey to contact her insurer. Because the warning letter was sent more than two years before the Estate filed its complaint, this Court affirmed the grant of summary judgment.

Here, Mullineaux informed the Grandview clients of Eckert's conflict of interest in October 2007, three years before they filed the complaint in this case. Just as in *Spry*, the Grandview clients received direct advice from attorneys as to their other attorney's malpractice, and they knew or reasonably should have known that they might have a claim against Eckert.

The Grandview clients contend that after the *Means* and *Leathermon* cases were filed against Grandview LLC, Eckert spoke with Keith on both occasions and advised

9

him not to worry about Grandview LLC's status as a defendant because it was only for form's sake. They further contend that Eckert told Keith that he would look out for Grandview LLC's interests "on the inside." Appellants' App. p. 317. Finally, they note Eckert told Keith to disregard Kightlinger & Gray's view that Eckert had a conflict of interest because, Eckert claimed, that firm was really representing Grandview LLC's insurer rather than the LLC itself. The Grandview clients say the statute should not have begun to run in October 2007 because they did not know who to believe.

Having been made aware of Eckert's conflict of interest by Mullineaux, it was not reasonable for the Grandview clients to do nothing in the midst of competing advice. In *Spry*, after the Estate told attorney Batey to contact her malpractice insurer, she wrote a letter defending her conduct and contending that the claim against the tavern was still valid. Attorney Batey's attempt to defend her work did not delay the statute of limitation or render the Estate unaware of its claim against her. Similarly, a reasonable person in the current case would have acted against Eckert based on Kightlinger & Gray's identification of a conflict of interest or at least made an effort to determine which advice was correct.[7]

---

[7] When Eckert moved into his new offices in February 2007, he told Keith that he purchased the building from one of the owners of MFS, whom the Grandview clients were still suing. Eckert said that the building was "a great bargain," which caused Keith to conclude that Eckert "was dealing with [the LLC's adversary] for his own benefit, not the benefit of the LLC." Appellants' App. p. 332. It is unreasonable for the Grandview clients to have spotted a possible conflict arising out of Eckert's property transaction but then fail to take any action when Mullineaux advised them of Eckert's conflict in the *Leathermon* case.

Next, the Grandview clients assert that the statute of limitation was tolled by the doctrine of continuous representation. As explained in *Biomet v. Barnes & Thornburg*, 791 N.E.2d 760, 765 (Ind. Ct. App. 2003), *trans. denied*, this doctrine applies "to delay the commencement of the statute of limitations until the end of an attorney's representation of a client in the same matter in which the alleged malpractice occurred." In describing the basis for the rule, a panel of this Court said:

> First, the continuous representation rule avoids disruption of the attorney-client relationship and gives attorneys the chance to remedy mistakes before being sued. At the same time, a client is not required to constantly second-guess the attorney, and in some cases, be forced to obtain other legal opinions regarding the attorney's handling of the case. Furthermore, a client may fully be aware that his attorney has erred to his detriment and still be willing to place his confidence in the attorney's ability to correct the error. We see no compelling reason for interfering with this fiduciary relationship.
>
> Second, this rule does not limit the client's ability to seek redress immediately. The client may terminate the relationship without providing the attorney an opportunity to mitigate the damages, and make a claim of legal malpractice within two years of the date of termination. At the same time, the rule prevents the client from having to adopt inherently different litigation postures, thereby compromising the success of both proceedings, by defending the attorney's actions in the appeal of the underlying action in which the alleged malpractice was committed and contesting the attorney's actions in the malpractice action. This rule further prevents an attorney from defeating a malpractice claim by continuing representation until the statute of limitations has expired.

*Id.* at 766-67 (citations and footnote omitted).

The facts before us do not line up favorably with these principles. After all, Mullineaux actually told the Grandview clients about Eckert's conflict, providing them with sufficient information to investigate or take action. The Grandview clients were

11

thus not forced to obtain another legal opinion or to second-guess Eckert because Mullineaux provided them with the necessary information in the course of his representation. Furthermore, application of the rule of continuous representation makes little sense here because the harm caused by Eckert happened *before* Mullineaux informed the Grandview clients about the conflict, and Eckert could not have corrected his misconduct at that point. Finally, as the *Biomet* panel observed, clients remain free to terminate the attorney-client relationship and seek redress at any time, so the Grandview clients reasonably could have done so after being advised of Eckert's conflict in October 2007.

We conclude that the doctrine of continuous representation does not toll the statute of limitation here. The trial court did not err by granting summary judgment to Eckert based on the statute of limitation.[8]

## II. GOERING, AGS, AND THE INSURANCE CLAIM

The Grandview clients contend that there are disputes of material fact as to whether Goering and AGS negligently mishandled their fire insurance claim. Goering and AGS say that they are entitled to summary judgment on the fire insurance claim because they did not represent the Grandview clients in that matter. They further argue that the Grandview clients should have discovered any malpractice no later than January 2008, so the complaint was tardy.

---

[8] Finally, the Grandview clients assert that Eckert's misconduct was "egregious" and against public policy, which should discourage deception and conflicts of interest between attorneys and clients. Appellants' Br. p. 21. There is a countervailing policy at work here, of course, that parties should pursue claims in a timely manner.

12

The elements of legal malpractice are as follows: "(1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *In re Estate of Lee*, 954 N.E.2d 1042, 1046 (Ind. Ct. App. 2011), *trans. denied*.

Here, after a fire destroyed the cemetery's office building in April 2007, Keith discussed his insurance claim with Goering. Goering "agreed to handle the matter," and Keith provided him with information. Appellants' App. p. 321.

Subsequently, the insurer demanded that Keith provide a sworn statement, and Keith sought Goering's advice. Keith declined to provide a sworn statement "based on [his] conversation with Goering." *Id.* Keith believed that Goering was in charge of the matter and that any communications from the insurer were being directed to Goering. In March 2009, Goering wrote to the insurer's counsel, stating that "we would like to get the insurance claim resolved as soon as possible" and that he was willing to schedule an examination. Appellees Goering and AGS's App. p. 99. One could reasonably infer from these facts that: (1) Goering and AGS were employed by the Grandview clients to represent them with respect to the insurance claim; and (2) the representation continued through at least March 2009, within two years of the filing of the complaint. *See Matter of Anonymous*, 655 N.E.2d 67, 70-71 (Ind. 1995) (determining that an implied attorney-client relationship was formed where attorney and client met on several occasions and discussed a wrongful-termination lawsuit).

13

Goering and AGS contend that Keith addressed the fire insurance loss without their assistance and that Keith was aware of any malpractice no later than January 2008, when the insurance company denied the claim. This is a request to view the evidence in a light most favorable to the movant.

We conclude that the statute of limitation does not bar the Grandview clients' claim against Goering and AGS for negligently handling the fire insurance claim and that there is a dispute of material fact as to whether the Grandview clients and Goering and AGS had an attorney-client relationship with respect to that matter. We reverse the trial court's grant of summary judgment to Goering and AGS.

## CONCLUSION

For the reasons stated above, we affirm the trial court's grant of summary judgment to Eckert and reverse it as to Goering and AGS.

Affirmed in part, reversed in part, and remanded.

BRADFORD, J., and BROWN, J., concur.

14