Crone, Judge,
dissenting.
I respectfully dissent from the majority’s affirmance of summary judgment in Devereux’s favor. The majority assumes, without deciding, that an attorney-client relationship existed between Dever-eux and DiBenedetto, who had dealt solely with Conour until the summer of 2011. I agree with this assumption, but it is important to note that “[c]reation of an attorney-client relationship is not dependent upon the formal signing of an employment agreement or upon the payment of attorney fees. An attorney-client relationship need not be express, but may be implied by the conduct of the parties.” Matter of Anonymous, 655 N.E.2d 67, 70 (Ind. 1995). “Attorney-client relationships have been implied where a person seeks advice or assistance from an attorney, where the advice sought pertains to matters within the attorney’s professional competence, and where the attorney gives the desired advice or assistance.” Id.
The designated evidence most favorable to DiBenedetto as the nonmoving party establishes that in July 2010, Dever-eux, Conour, and Hammond signed a letter *1126 to DiBenedetto on the.Firm’s letterhead that stated, “[W]e are continuing to represent you as your attorneys!!,]” and, “We look forward to continuing to work with you to the conclusion of your claim. If you have any questions or wish to discuss this matter, please call any one of us.” Appellant’s App. Vol.'2 at 65. According to DiBenedetto’s affidavit, sometime after she received that letter, Conour told her' “that all of the attorneys would be working on [her] case.” Appellant’s App. Vol. 3 at 29 (emphasis added). When DiBenedetto visited the Firm in the summer of 2011 to ask about “the settlement of [her] case” and “when [she] would be receiving payments[,]” Devereux “did not tell [her] that he was only an employee or that [she] could not rely on him.” Id. at 30, 29. In response to DiBenedetto’s inquiry, Dever-eux told her that she “would not be receiving money until the liens had been taken care of.” Id. at 30. At the very least, this evidence is sufficient to create a genuine issue of material fact as to whether an attorney-client relationship existed between Devereux and DiBenedetto.
As DiBenedetto’s attorney, Dever-eux owed her a general duty to exercise ordinary skill and knowledge. In re Estate of Lee, 954 N.E.2d 1042, 1047 (Ind. Ct. App. 2011), trans. denied (2012). And, as the majority acknowledges, it “goes without saying” that he owed her “a duty to provide her with truthful, accurate, and non-misleading information when he met with her during the- summer of 2011.” Op. at 1121 (citing Ind. Professional Conduct Rules 1.4(a)(2) and 1.4(b)). The majority concludes as a matter of law that Dever-eux did not breach this duty. I respectfully disagree.
In support of her response to Dev-ereux’s summary, judgment motion, DiBen-edetto submitted the affidavit of an experienced practicing attorney who opined that Devereux breached the applicable standard of care, based in part on his belief that Devereux knew or should have known that Conour had not complied with Professional Conduct Rule 1.15(d) and that Dev-ereux should have advised DiBenedetto accordingly. Rule 1.15(d) states,
Upon receiving funds or other property in which the client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permits ted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(Emphasis added.)
During his meeting with DiBenedet-to, Devereux became aware that the $50;000 settlement check from the tortfea-sor had been deposited in Conour’s trust account at least five months earlier and that DiBenedetto’s bills for medical services (the last of which had been rendered at least six months earlier) totaled less than $35,000. Thus, Devereux also became aware that Conour had not promptly delivered to DiBenedetto any funds that she was entitled to receive. See Matter of Helmer, 634 N.E.2d 56, 56 (Ind. 1994) (finding that attorney ’ violated Ind. Professional Conduct Rule 1.15 by waiting three months to deliver client’s portion of settlement funds). In his deposition, Devereux testified that he told DiBenedetto and her father that “they would haye to ask Mr. Conour” about “when they would be getting payments” and “explained typically what happened with cases like this if there were medical liens, both cases had to be settled, the underlying lawsuit and the UIM claim, and then the medical bill liens *1127 had to be resolved” and that “generally, that’s how the system works.” Appellant’s App. Vol. 2 at 101. Another experienced practicing attorney who submitted an affidavit in support of Devereux’s summary judgment motion took a similar position. Appellant’s App. Vol. 3 at 99. Simply because attorneys “generally” handle certain cases in a certain way does not mean that the procedure always complies with the Professional Conduct Rules adopted by our state’s highest court.
At oral argument, Devereux conceded that a minimum of $10,000 of the $50,000 settlement was unencumbered by any potential medical liens or attorney fees, that there was no legal impediment to distributing that amount to DiBenedetto at that time, and that he did not advise her that she had a present right to receive those funds. See Oral Arg. at 22:29-24:21.[10] Had he done so, DiBenedetto could have asked for and received the funds from Conour, or she might have been put on notice that something sinister was afoot and terminated her relationship with Con-our. It is important to remember that her funds were still in Conour’s trust account at that time.
Personal injury plaintiffs are often strapped for cash and hounded by creditors while they wait for their cases to be resolved. They are also often unfamiliar with the ins and outs of negotiations and settlements and the professional responsibilities of the attorneys who are legally and ethically obligated to protect their interests. Consequently, it is imperative for attorneys to comply with Professional Conduct Rule 1.15(d) and either promptly distribute funds to which their clients are indisputably entitled or, at a minimum, advise them of their right to receive those funds. Based on the evidence most favorable to DiBenedetto as the nonmoving party, I believe that genuine issues of material fact exist regarding whether Devereux breached his duty to provide DiBenedetto with truthful, accurate, and non-misleading information regarding Conour’s handling of the tortfeasor’s settlement funds and her present right to receive those funds, as well as whether any breach proximately caused her alleged damages relating to those funds.[11] Therefore, I would reverse the trial court’s grant of summary judgment in Devereux’s favor, remand for trial, and deny Devereux’s request for attorney fees.

. Devereux also conceded that any subsequent reduction of the medical bills via negotiations with health care providers could only have resulted in a larger recovery for DiBene-detto. See Oral Arg. at 23:03-23:15.

. Because there is no evidence that Dever-eux had any further involvement with DiBen-edetto or had any knowledge of Conour’s subsequent settlement of her UIM claim, I do not believe that he may be considered a proximate cause of her failure to receive those funds.