**FOR PUBLICATION**



FILED

Oct 15 2013, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**JON R. PACTOR**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ABIGAIL L. SEIF**
Epstein Cohen Seif & Flora
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MARTHA FERGUSON, ANTHONY W. )
SCHMITT, REBECCA SCHMITT, MARY )
MEADOWS, CHRISTOPHER SCHMITT, )
ROSEMARY SCHMITT, JERRY W. )
SHILLINGTON, CHRISTINA ALEMAN, )
STEVEN SHILLINGTON, MICHAEL JOSEPH )
SCHMITT, and KEN JOLLY, )
                                       )

    Appellants-Plaintiffs, )

                vs. )     No. 49A02-1211-CT-917

BERTON O'BRYAN, )

    Appellee-Defendant. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-1004-CT-14906

October 15, 2013

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In *Walker v. Lawson*, our supreme court held that "an action will lie by a beneficiary under a will against the attorney who drafted that will on the basis that the beneficiary is a known third party." 526 N.E.2d 968, 968 (Ind. 1988). Following Mary Linder's death, a group of her relatives ("the Relatives")[1] brought a legal malpractice action against the drafter of her will, attorney Berton O'Bryan. The Relatives were not specifically named in the will, but were listed on a form that O'Bryan had given Linder for the purpose of making bequests to her intended beneficiaries. The list was referenced in the will, but was not signed, dated, or witnessed. The Relatives assert that as a result of O'Bryan's professional negligence in drafting the will, the bequests that Linder intended to make to them failed. O'Bryan claims that he never saw the list before Linder's death. He successfully moved for summary judgment on the basis that he owed the Relatives no legal duty with respect to drafting the will because they were not known third-party beneficiaries.

On appeal, the Relatives argue that the trial court erred in granting O'Bryan's summary judgment motion. We conclude that regardless of whether O'Bryan saw the list, he knew that Linder intended to benefit anyone named on the list; therefore, the Relatives are known third-party beneficiaries for purposes of *Walker* and are thus entitled to bring a legal malpractice action against O'Bryan. Consequently, we reverse and remand for further proceedings.

---

[1] The Relatives are Martha Ferguson, Anthony W. Schmitt, Rebecca Schmitt, Mary Meadows, Christopher Schmitt, Rosemary Schmitt, Jerry W. Shillington, Christina Aleman, Steven Shillington, Michael Joseph Schmitt, and Ken Jolly.

## Facts and Procedural History[2]

In 2005, the seventy-eight-year-old Linder wished to change her will. Linder contacted Marian College, her alma mater, for a referral to an attorney. The school referred her to O'Bryan, who is also a Marian graduate. Linder hired O'Bryan to draft a new will, a power of attorney, a health care representative form, a living will, and other documents. Before O'Bryan drafted the will, Linder informed him that she had a list of items that she wanted to leave to various individuals. O'Bryan informed Linder that he would bring her a separate form that she could use to make these and other specific bequests and told her that she would need to fill out the form and sign and date it. In accordance with Linder's wishes, the will contained a residuary clause in favor of Marian College. The will also referenced the list that Linder had discussed with O'Bryan. Specifically, Article II of the will provided as follows:

> I hereby give and bequeath each described item of cash or personalty set out on a certain list which I will from time to time update and keep with this Will. Said list will set out the name of the person and the item or items I bequeath to each such person.
>
> I direct that my Personal Representative honor the list the same as if it had been set out herein. Should any questions arise regarding said list, the decision of my personal representative shall be conclusive. Any modifications I may choose to make to said list shall each be dated and initialed.

Appellants' App. at 20-21.

---

[2] We held oral argument on July 24, 2013, in Indianapolis. We thank the parties for their presentations.

The form O'Bryan provided to Linder for the purpose of making the list referred to in her will was titled "Specific Bequests of Cash and/or Personalty" and included the following statement:

> This list is the one I, Mary Helen Linder, referred to in my Last Will & Testament dated February 19, 2005. I direct that my Personal Representative honor this list and see to it that each such listed item be given to the named donee. I intend to make changes to this list from time to time by additions or deletions by lining through any deletions and initialing and dating all such changes. I will try to keep this list with or near a copy of the above-mentioned Will.

*Id.* at 24. The form did not contain designated spots for the bequests to be signed, dated, or witnessed.

Linder filled in the form indicating that she wished to make a number of cash bequests, including bequests to the Relatives ranging from $5000 to $50,000 apiece.[3] Linder did not sign and date the list as instructed, nor was the list witnessed. Following the execution of the will, O'Bryan stayed in regular contact with Linder, but he denies ever seeing the filled-in form or even knowing whether Linder ever filled out the form at all. At Linder's request, O'Bryan drafted a codicil and assisted Linder in its execution on December 5, 2007. Linder passed away just twelve days later.

Within hours of Linder's death, Ken Jolly, Linder's nephew and the named personal representative of her estate, located the will, codicil, and list. Jolly notified O'Bryan, who filed the will and codicil with the probate court, but not the list. Sometime later, O'Bryan

---

[3] Anthony W. Schmitt and Rebecca Schmitt are not included on the list, but they sought to recover as heirs of their father, Anthony Dominic Schmitt, who was included on the list.

4

informed the probate court of the list's existence. The probate court appointed special counsel to investigate the list's validity and held a hearing on the matter. Before the probate court issued a ruling, it approved a settlement agreement between Linder's estate and the Relatives providing that the list was invalid and that $25,000 would be divided among the Relatives.[4]

In April 2010, the Relatives filed a legal malpractice action against O'Bryan. In August 2011, O'Bryan filed a motion for summary judgment, asserting that he did not owe the Relatives a duty because "there is absolutely no evidence that [he] had actual knowledge that they were on the List or were intended beneficiaries of Ms. Linder or her Estate." Appellants' App. at 34. After a hearing, the trial court denied the motion in March 2012. O'Bryan filed a motion to correct error, and, after a hearing, the trial court granted the motion and entered summary judgment for O'Bryan in June 2012. The Relatives then filed a motion to correct error, and the trial court held yet another hearing. In October 2012, the trial court entered an order denying the Relatives' motion to correct error and clarifying the basis for its entry of summary judgment in O'Bryan's favor. The Relatives now appeal.

## Discussion and Decision

On appeal, the Relatives argue that the trial court erred in granting summary judgment in O'Bryan's favor. When reviewing a trial court's ruling on a motion for summary judgment, this Court stands in the shoes of the trial court and applies the same standards in

---

[4] The settlement agreement was not designated to the trial court, and the details of the agreement are unclear from the record before us. No party has suggested that O'Bryan was a party to the settlement or that it released him from liability to the Relatives.

deciding whether to affirm or reverse the ruling. *Ritchhart v. Indianapolis Pub. Sch.*, 812 N.E.2d 189, 191 (Ind. Ct. App. 2004), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009). This standard requires us to construe all factual inferences in favor of the nonmoving party, and all doubts as to the existence of an issue of material fact must be resolved against the moving party. *Id.* The party moving for summary judgment bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that judgment as a matter of law is appropriate. *Id.* "[O]nce the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact." *Id.* at 1270.

"A trial court's ruling on a motion for summary judgment comes before this Court clothed with a presumption of validity." *Ford v. Culp Custom Homes, Inc.*, 731 N.E.2d 468, 471 (Ind. Ct. App. 2000) (quotation marks omitted). Accordingly, the party appealing the grant of summary judgment bears the burden of persuading us that the trial court's ruling was improper. *Reel v. Clarian Health Partners, Inc.*, 873 N.E.2d 75, 78 (Ind. Ct. App. 2007), *trans. denied* (2008). Nevertheless, we "must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court." *Id.* "Where, as here, the trial court makes findings and conclusions in support of its entry of summary judgment, we are not bound by such findings and conclusions, but they aid our review by

6

providing reasons for the trial court's decision." *In re Estate of Lee*, 954 N.E.2d 1042, 1045 (Ind. Ct. App. 2011), *trans. denied* (2012).

The Relatives argue that the trial court erred in granting summary judgment in O'Bryan's favor on their legal malpractice claims. In Indiana, "the elements of legal malpractice are: (1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff." *Clary v. Lite Mach. Corp.*, 850 N.E.2d 423, 430 (Ind. Ct. App. 2006). "A defendant is entitled to summary judgment by demonstrating that the undisputed material facts negate at least one element of the plaintiff's claim." *Rider v. McCamment*, 938 N.E.2d 262, 266 (Ind. Ct. App. 2010). Summary judgment is "rarely appropriate" in negligence cases, including legal malpractice actions, because such claims "are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)); *see also Oxley*, 819 N.E.2d 851 at 856-57. The existence of a duty, however, is a legal question for the court's determination and may therefore be appropriate for disposition by summary judgment. *Keybank Nat'l Ass'n v. Shipley*, 846 N.E.2d 290, 295 (Ind. Ct. App. 2006), *trans. denied*. In this case, we are asked to address a question of duty.

It is well settled that attorneys owe their *clients* a duty to exercise ordinary skill and knowledge in performing professional functions. *Estate of Lee*, 954 N.E.2d at 1047. It is undisputed that O'Bryan was employed as Linder's attorney and therefore owed her a duty to

7

exercise ordinary skill and knowledge in drafting the will. But to the extent that O'Bryan breached any duty owed to Linder, the claim belongs to her estate. It is well settled that a personal representative has exclusive authority to bring such claims on behalf of the estate. *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 394 (Ind. Ct. App. 2003), *trans. denied*. Although one of the Relatives, Ken Jolly, is also personal representative of Linder's estate, he has not brought this suit in that capacity or on behalf of the estate. Instead, he and the other Relatives have brought suit against O'Bryan in their own right as intended beneficiaries. As such, the pertinent question in this appeal is whether O'Bryan's duty to exercise ordinary care and skill in the preparation of the will extended to the Relatives.

In *Walker v. Lawson*, our supreme court held that "an action will lie by a beneficiary under a will against the attorney who drafted that will on the basis that the beneficiary is a known third party." 526 N.E.2d at 968. Thus, because a beneficiary named in the will clearly satisfied the "known" requirement, he was permitted to proceed with a malpractice suit against the drafting attorney. On appeal, the Relatives contend that *Walker* controls here. They acknowledge, however, that "[t]he *Walker* court did not discuss what 'know' or 'known' means in the context of the drafting attorney" and argue that

> [l]egal malpractice law does not require that the drafting attorneys have the actual names of the intended beneficiaries when they draft wills in order to be liable to persons who were intended to be beneficiaries. After all, Indiana probate law does not require that a will must include actual names of beneficiaries in order to make valid bequests to them in the first place. For example, the probate code explicitly sanctions drafters of wills to utilize words such as "heirs," "family," "next of kin," and "relatives" without having to know the specific names of the people within those classes. I.C. § 29-1-6-1(c).

8

As there is no prohibition against drafters from making valid wills for unnamed intended beneficiaries, it thus cannot be a defense to a legal malpractice claim that a negligent attorney did not know the specific names of the intended beneficiaries of the client's will.

For purposes of the "know" or "known" elements, it was enough that Mr. O'Bryan knew that [Linder] wanted to name specific people.

Appellants' Br. at 17-18.[5]

We find this argument persuasive. Article II of Linder's will conclusively establishes that O'Bryan knew that she intended to benefit third parties, whom she would list on a separate form that he provided to her. To hold that O'Bryan did not owe the Relatives a duty in this situation would immunize and thus encourage even more egregious acts of malpractice, to the detriment of innocent third-party beneficiaries.[6] O'Bryan knew that the third parties to be named on Linder's list would rely on his professional skill and judgment to reap any benefits under the will, and the fact that he may not have known their names when

---

[5] Because it is undisputed that O'Bryan knew that Linder wanted to name specific beneficiaries, we are unpersuaded by O'Bryan's (and the trial court's) reliance on *Beckom v. Quigley*, 824 N.E.2d 420 (Ind. Ct. App. 2005), in which there was no evidence that the defendant attorney actually knew that the testator wanted to amend his will to name the plaintiffs as beneficiaries.

[6] As Judge Buchanan observed in this Court's opinion in *Walker v. Lawson*,

The sole purpose of retaining the attorney [to draft a will] is to benefit known third parties. This is the objective of the transaction. The rationale voiced by the courts [in extending liability to third-party beneficiaries] is that if the beneficiaries are not permitted to recover for the loss resulting from the negligence, no one is able to do so. The estate is not harmed, except to the extent of attorney's fees paid. Unless the beneficiary can recover against the attorney, the social policy of preventing future harm is frustrated.

514 N.E.2d 629, 633-34 (Ind. Ct. App. 1987), *opinion vacated by* 526 N.E.2d 968 (Ind. 1988).

9

he drafted the will cannot insulate him from liability.[7] *Cf. Webb v. Jarvis*, 575 N.E.2d 992, 996 (Ind. 1991) (recognizing *Walker* and other cases as holding that "a professional is not liable to third persons who rely on his conclusions or opinions unless the professional had actual knowledge that those third persons would have such reliance"). Based on the foregoing, we reverse the trial court's grant of O'Bryan's summary judgment motion and remand for further proceedings consistent with this opinion.

Reversed and remanded

ROBB, C.J., concurs.

FRIEDLANDER, J., dissents with opinion.

---

[7] We agree with the Relatives that a genuine issue of fact exists regarding whether O'Bryan actually knew the names of the intended beneficiaries on the list. O'Bryan's self-serving claim that he never saw the list would be insufficient to resolve that issue in his favor as a matter of law. *See Insuremax Ins. Co. v. Bice*, 879 N.E.2d 1187, 1190 (Ind. Ct. App. 2008) ("When the facts are peculiarly in the knowledge of the movant's witnesses, there should be an opportunity to impeach them at trial, and their demeanor may be the most effective impeachment."), *trans. denied*. Because we hold that O'Bryan owed the Relatives a duty regardless of whether he knew their names, this factual issue is not material for purposes of summary judgment.

# IN THE
# COURT OF APPEALS OF INDIANA

MARTHA FERGUSON, et al            )
                                  )
    Appellants - Plaintiffs,       )
                                  )
        vs.                 )     No. 49A02-1211-CT-917
                                  )
BERTON O'BRYAN                    )
                                  )
    Appellee-Defendant.           )
                                  )

**FRIEDLANDER, Judge, dissenting**

In *Walker v. Lawson*, our Supreme Court held that a will-drafting attorney owed a duty to a listed beneficiary of the will "on the basis that the beneficiary is a known third party." 526 N.E.2d 968, 968 (Ind. 1988). We are now called upon to consider more precisely what an attorney is required to know in order to create a duty to a beneficiary. The Majority holds that it is sufficient if the attorney knows that the testator intends, at some future point, to create a list naming a group of unidentified individuals as beneficiaries. Because I believe more is required, I respectfully dissent.

11

A brief review of the evolution of the law surrounding an attorney's duty to a known third-party beneficiary of a will is helpful in this analysis. Privity was traditionally a prerequisite to the imposition of a duty in professional negligence cases. *Nat'l Sav. Bank of Dist. of Columbia v. Ward*, 100 U.S. 195, 200 (1879) (noting that "the general rule is that the obligation of the attorney is to his client and not to a third party"); *see also Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991) (noting that "[d]uring the nineteenth century, the common law required privity in order to impose a duty of reasonable care"). Accordingly, the lack of privity between will-drafting attorneys and intended beneficiaries traditionally acted as a bar to the type of suit before us. In the oft-cited case of *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179-80 (1931), Justice Cardozo described the rationale behind the privity rule thusly:

> If liability for negligence exists, a thoughtless slip or blunder . . . may expose [professionals] to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of business conducted on these terms are so extreme as to enkindle doubt whether a flaw may exist in the implication of a duty that exposes to these consequences.

Justice Cardozo went on to note, however, that "[t]he assault upon the citadel of privity is proceeding these days apace. How far the inroads shall extend is now a favorite subject of juridical discussion." *Id.* at 180; *see also Webb v. Jarvis*, 575 N.E.2d at 995 (noting that the privity rule "has vanished evolutionarily during the twentieth century" and now "it is well-established that privity is not always required").

In *Walker v. Lawson*, our Supreme Court did not entirely scuttle the traditional privity rule in the context of negligent will-drafting; rather, the Court articulated a limited exception to the rule based on the drafting attorney's actual knowledge. *See Beckom v. Quigley*, 824

12

N.E.2d 420 (Ind. Ct. App. 2005) (holding that *Walker v. Lawson* requires a will-drafting attorney to have actual knowledge of a third-party beneficiary). I believe this exception is consistent with the rationale supporting the traditional privity rule because it incorporates its own limitations on liability. Specifically, in the will-drafting context, a *known* beneficiary does not belong to an undetermined class; the potential plaintiffs are, by definition, known at the time the will is drafted. The attorney is aware of the potential plaintiffs and their potential injuries because the attorney has listed the beneficiaries, along with the testator's intended bequests, in the will. Thus, the attorney is not exposed "to a liability in an indeterminate amount for an indeterminate time to an indeterminate class." *See Ultramares Corp. v. Touche*, 255 N.Y. at 179.

But here, the Relatives were not listed in the will. Instead, they were included on a list created by Linder *after* the execution of the will, and Linder could have added a potentially limitless number of unknown individuals to the list. Under these circumstances, the rationale underlying the exception for known beneficiaries disappears, and imposing a duty would expose the drafting attorney to precisely the type of unlimited liability the privity rule and the exception set forth in *Walker v. Lawson* were designed to prevent. Accordingly, I do not believe the Relatives fall within the category of known third parties contemplated by our Supreme Court in *Walker v. Lawson*.

Moreover, I believe that there are additional reasons to be wary of any further relaxation of the privity rule in the context of attorney malpractice cases. This court has noted that if attorneys were required "to consider the risk of harm to unknown third persons

13

before drafting a will in accordance with his client's wishes, we would be forcing the attorney to weigh the welfare of unknown persons against the duty of care to his client." *Beckom v. Quigley*, 824 N.E.2d at 428. We also noted in *Beckom v. Quigley* that an attorney must be able to identify the persons directly affected by his or her services in order to undertake a proper duty of care toward them. Moreover, imposing a duty in favor of unidentified third parties would make it impossible for attorneys to identify potential conflicts of interest.

Accordingly, I would hold, and indeed we have always held, that in order to qualify as a known third party, an intended beneficiary must be known and identified at the time the will is drafted.[8] Because the list on which the Relatives were identified was not created until after the will was drafted, they clearly do not fall within this category. For the same reason, I would reject the Relatives' argument that O'Bryan owed them a duty because he ostensibly learned that they had been named on the list at some point after the will was drafted. The Relatives essentially argue that we should retroactively expand the class of individuals to whom a will-drafting attorney owes a duty based upon knowledge the attorney might subsequently obtain. But to do so would have the same effect as allowing liability even in the absence of such knowledge—O'Bryan would be exposed to liability to a potentially unlimited number of plaintiffs unidentified to him at the time he drafted the will. For all of these reasons, I would affirm the trial court's summary judgment order.

---

[8] Because the question is not presented in this appeal, I would not reach the question of whether a duty would lie when beneficiaries are identified not by name, but by a class designation, for example, "next of kin."