

**FILED**

Oct 09 2015, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Michael E. DiRienzo, Esq.
Kent A. Brasseale, Esq.
Kahn, Dees, Donovan & Kahn,
LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

John E. Rhine
Rhine Ernest LLP
Evansville, Indiana

Meagan R. Brien
Bingham Greenebaum and Doll LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Allen Gray Limited Partnership
IV,

*Appellant-Defendant,*

v.

Bishop Mumford, Christopher
Mumford, Elizabeth B.
Mumford, Richardson S.
Mumford, Thomas F. Mumford,
Jr., and William M. Mumford,

*Appellees-Plaintiffs.*

October 9, 2015

Court of Appeals Case No.
26A01-1503-MI-92

Appeal from the Gibson Circuit
Court;
The Honorable Jeffrey F. Meade,
Judge;
26C01-1302-MI-4

**May, Judge.**

[1] Allen Gray Limited Partnership IV ("Allen Gray") appeals a summary judgment for Bishop, Christopher, Elizabeth, Richardson, Thomas, and William Mumford, (collectively, "Mumford"), who sold mineral rights to Allen Gray but reserved the rights to oil and gas from certain producing wells. As the reservations were for a defined area and did not limit Mumford to oil and gas produced under existing permits, we affirm.

## Facts and Procedural History

[2] Allen Gray's predecessor bought from Mumford mineral rights under land in Gibson and Posey Counties. Mumford reserved oil and gas rights for twenty years from the date of the conveyance and for "as long thereafter as oil and gas is being produced" from the property. (App. at 23.) The deed provided that after the twenty-year period expired, Mumford's reservation would continue as to each well then producing and as to "the *drilling unit upon which each such producing well is located* as evidenced by the drilling permit" until production ceases and the well is plugged. (*Id.*) (emphasis added).

[3] Allen Gray argued below that the reference in the reservation to "the drilling permit" limited Mumford's reservation to oil and gas that could be produced under the terms of permits that existed at the end of the twenty-year term -- specifically, that Mumford could not deepen existing wells because that would require a new permit. The trial court instead determined the reservation included the acreage surrounding each well as defined by the permit, and it entered summary judgment for Mumford.

# Discussion and Decision

[4] When reviewing a summary judgment, this Court stands in the shoes of the trial court and applies the same standards in deciding whether to affirm or reverse the ruling. *Ferguson v. O'Bryan*, 996 N.E.2d 428, 431 (Ind. Ct. App. 2013), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id*. (citing Ind. Trial Rule 56(C)). This standard requires us to construe all factual inferences in favor of the nonmoving party, and all doubts as to the existence of an issue of material fact must be resolved against the moving party. *Id*.

[5] A ruling on a motion for summary judgment comes before this court clothed with a presumption of validity. *Id*. at 432. Accordingly, the party appealing a summary judgment bears the burden of persuading us that the trial court's ruling was improper. *Id*. Nevertheless, we carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id*. Where, as here, the trial court makes findings and conclusions in support of its entry of summary judgment, we are not bound by such findings and conclusions, but they aid our review by providing reasons for the decision. *Id*. We will affirm the grant of summary judgment on any theory or basis found in the record. *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1311 (Ind. Ct. App. 1991), *reh'g denied, trans. denied*.

[6] The construction of the terms of a written instrument, and the determination whether summary judgment is appropriate when material facts are not in dispute, are both pure questions of law for a court. *Keene v. Elkhart Cnty. Park & Recreation Bd.*, 740 N.E.2d 893, 896 (Ind. Ct. App. 2000), *reh'g denied.* In an action for the construction of a deed conveying mineral rights, the disposition of the controversy by summary judgment is appropriate if the deed is not susceptible of any interpretation other than that in favor of one of the parties. 35B C.J.S. *Federal Civil Procedure* § 1214 (citing *Ross Coal Co. v. Cole*, 249 F.2d 600 (4th Cir. 1957)). The deed reservation now before us is not susceptible to any interpretation other than that in favor of Mumford.

### Timeliness of Mumford's Response to Allen Gray's Motion

[7] Allen Gray first argues the trial court should have stricken Mumford's response to Allen Gray's summary judgment motion and the Allen Gray designation of evidence because it was filed too late. Any such error was harmless.

[8] Allen Gray filed its summary judgment motion and Mumford did not respond within thirty days. About a month and a half after Allen Gray's motion, Mumford called the trial court[1] to ask about the deadline. The court allowed Mumford two more weeks to respond. Allen Gray asked the court to reconsider that ruling, and Mumford responded and filed its own summary

---

[1] In one filing, Mumford asserts court personnel called Mumford's counsel to ask whether counsel intended to file a response.

judgment motion. Allen Gray moved to strike Mumford's motion. The court heard argument on both parties' summary judgment motions and after the parties submitted proposed orders it granted summary judgment for Mumford.

[9] Trial Rule 56(C) provides an adverse party to a summary judgment motion "shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." The court "may alter any time limit set forth in this rule," but only "upon motion made within the applicable time limit" and "[f]or cause found." T.R. 56(I). Even if the court erred in permitting Mumford to respond after the thirty-day time period had expired and declining to strike it on Allen Gary's motion, the error was harmless, as Mumford was not obliged to make its own motion for summary judgment.

[10] "When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." T.R. 56(B). Summary judgment "shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court." *Id*. A party who moves for summary judgment bears the risk that the court will enter summary judgment in favor of the non-moving party, even when the non-moving party has not filed a cross-motion for summary judgment or otherwise responded to the summary judgment motion. *Larson v. Karagan*, 979 N.E.2d 655, 659 (Ind. Ct. App. 2012).

In their response to Allen Gray's motion to reconsider the extension of time, Mumford told the court it did not plan to introduce any evidence in response to Allen Gray's summary judgment motion. Allen Gray concedes in its brief that this case involves the interpretation of the deed language and there are no disputed issues of fact. As explained below, summary judgment for Mumford would have been proper even had it offered no evidence or other response to Allen Gray's motion. Thus, any error in permitting Mumford's late response was harmless. *See, e.g.*, *Bonnes v. Feldner*, 642 N.E.2d 217, 219 (Ind. 1994) (error is harmless if it does not affect the substantial rights of the parties).

### *The Deed Reservation*

The trial court correctly determined Mumford's deed reservation included the acreage surrounding each well and did not restrict Mumford's ability to drill deeper if it could obtain permits to do so. The reservation language at issue is the reference to "the *drilling unit upon which each such producing well is located* as evidenced by the drilling permit" until production ceases and the well is plugged. (App. at 23) (emphasis added).

Drilling permits define, among other things, how deep a well will be *and* the surface area on which the well is located. The Mumford permits, for example, include a precise legal description of certain acreage, grant authority to drill a well "on the above described premises," and indicate the "contemplated depth" of the well. (*E.g.*, App. at 105.) The area referred to in the permit is the "drilling unit" and it is determined by well spacing regulations and the nature of the geological formation underneath. The trial court found:

A drilling unit is defined as: "The area prescribed by applicable well spacing regulations for the granting of a permit by the regulatory agency for the drilling of a well; the area assigned in the granting of a well permit." Williams & Meyers, Oil and Gas Law, Vol. 8, Manual of Terms.

(App. at 9.) In Indiana, the size of a drilling unit is determined by the nature of the reservoir:

(a) This section establishes drilling units.

(b) For sandstone reservoirs, every quarter, quarter, quarter section containing ten (10) acres, more or less, as established by the official U.S. Public Lands Survey by the rectangular surveying system for the state.

(c) For all other reservoirs, except in established Trenton limestone reservoirs, half a quarter, quarter section containing twenty (20) acres, more or less, as established by the official U.S. Public Lands Survey by the rectangular surveying system for the state.

312 Ind. Admin. Code 16-5-2.[2]

Allen Gray argues the deed reservation is limited to the oil and gas that can be produced from the wells *as authorized by the existing permits*, as Mumford would have to get new permits to deepen the wells at those locations. But the deed

---

[2] *And see* http://www.in.gov/dnr/dnroil/4545.htm#Q16 (last visited September 7, 2015): ("Q: What is a drilling unit and what are the unit requirements? A: A drilling unit is the acreage that is assigned to a single well for conservation purposes.").

does not say that. Instead, it explicitly reserves for Mumford "the drilling unit upon which" each producing well is located, and says nothing about the depth of the well or any other aspect of the permit other than the "drilling unit." (App. at 23.) Mumford reserved the *acreage* on which the wells were drilled, and that reservation of the drilling unit does not limit Mumford's ability to deepen the wells on those units if it can obtain a permit to do that.

[17] The trial court correctly determined the reservation applied to the *surface area* of the "drilling unit," and did not restrict Mumford from making the reserved wells deeper. Summary judgment for Mumford therefore was not error, and we affirm.

[18] Affirmed.

Vaidik, C.J., and Robb, J., concur.