

FILED

Oct 10 2017, 9:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

John C. Duffey
Heather L. Emenhiser
Stuart & Branigin LLP
Lafayette, Indiana

ATTORNEYS FOR *AMICUS CURIAE*,
ASSOCIATION OF AMERICAN
RAILROADS

Harold Abrahamson
Jonathan Halm
Abrahamson, Reed, & Bilse
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Defendant,*

v.

Norfolk Southern Railway
Company,

*Appellee-Plaintiff*

October 10, 2017

Court of Appeals Case No.
02A03-1607-IF-1524

Appeal from the Allen Superior
Court

The Honorable Wendy Davis,
Judge;
The Honorable David M. Zent,
Magistrate.

Trial Court Cause No.
02D05-1503-IF-2039,
02D06-1505-IF-2988,
02D05-1505-IF-3070,
02D06-1505-IF-3071,
02D04-1505-IF-3082,
02D04-1505-IF-3084,

02D06-1505-IF-3183,
02D06-1505-IF-3246,
02D05-1505-IF-3248,
02D04-1505-IF-3251
02D04-1505-IF-3255,
02D06-1505-IF-3262,
02D04-1505-IF-3263,
02D05-1505-IF-3264,
02D05-1505-IF-3312,
02D04-1505-IF-3362,
02D06-1505-IF-3363,
02D06-1506-IF-6379,
02D04-1506-IF-6383,
02D04-1508-IF-9742,
02D06-1508-IF-9744,
02D06-1511-IF-13718,
02D04-1512-IF-15577

**May, Judge.**

[1]     The State of Indiana ("State") appeals the trial court's grant of summary judgment in favor of Norfolk Southern Railway Company ("Norfolk").[1]  The State argues the trial court erred as a matter of law when it determined Indiana's Blocked Crossing Statute, Indiana Code section 8-6-7.5-1 ("Indiana Blocked Crossing Statute"), is preempted by the Interstate Commerce Commission Termination Act ("ICCTA") and the Federal Railroad Safety Act ("FRSA").  We reverse and remand.[2]

---

[1] The Association of American Railroads ("AAR") appeared as Amicus Curiae.

[2] We held oral argument in this case on August 29, 2017, in the Indiana Court of Appeals Courtroom.  We thank counsel for their able advocacy.

# Facts and Procedural History

[2] The facts here are not disputed. In 2015, the State issued twenty-three citations to Norfolk for violations of Indiana's blocked-crossing statute, Indiana Code section 8-6-7.5-1 ("Indiana's Blocked Crossing Statute"). Norfolk does not dispute "that the trains in these causes blocked the crossings for more than ten minutes on each occasion." (App. Vol. II at 7.) Nevertheless, Norfolk challenged the citations.

[3] On September 21, 2015, Norfolk filed a motion for summary judgment, arguing Indiana's Blocked-Crossing Statute is preempted by the ICCTA and the FRSA. The State responded, and the trial court held a hearing on the matter on January 12, 2016. On June 8, 2016, the trial court granted Norfolk's motion for summary judgment after concluding "I.C. 8-6-7.5-1 is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101, et seq., and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq." (*Id.* at 9.)

[4] In its order granting summary judgment in favor of Norfolk, the trial court outlined some of the relevant facts which led to the citations:

> 1. Trains block grade crossings in excess of ten minutes for various reasons in the performance of Norfolk Southerns' [sic] railroad operations in New Haven.
>
> 2. For example, Norfolk Southern performs switching operations in connection with its service to various industries. Performing switching maneuvers typically at Rose Avenue and Hartzell

Road, which are directly east of the East Wayne Yard. Safe coupling of cars during switching operations must be completed at slow speeds. Coupling cars at anything but a slow speed may cause cars to derail. Switching operations typically take longer than ten minutes to perform. Norfolk Southern could not perform these switching operations without, at times, blocking grade crossing [sic] in excess of ten minutes.

3. Further, inbound trains may be held while waiting for entry into the East Wayne Yard and to allow other train traffic to pass. This may result in grade crossing blockages in excess of ten minutes. Trains may also stop as the result of a mechanical defect with the train, resulting in grade crossing blockages in excess of the [sic] minutes.

4. Doyle Road is the first siding track east of the East Wayne Yard. Trains park on the siding to allow other train traffic to pass on the mainline. This may result in grade crossing blockages on Doyle Road in excess of ten minutes.

5. To attempt to limit the time a train may obstruct a grade crossing to ten minutes Norfolk Southern would be required to run trains at a faster speed so as to clear crossings more quickly, to run shorter (and, therefore, more numerous) trains so they can be stopped without obstructing grade crossings, or to break or "cut" the train to open the grade crossing for motor vehicle traffic.

6. Norfolk Southern can only open grade crossings for motor vehicle traffic (during the time the train is stopped) by breaking or "cutting" the train into two or more segments (train segments), depending on the length of the train. Cutting a train requires a temporary interruption of the train's braking system.

7. The crew must reassemble these train segments and perform an airbrake safety test required by federal regulations before the train can be moved - an airbrake test that can only be performed once the train is completely reassembled. Reassembling the train and performing the federally mandated airbrake test is a procedure that requires more than ten minutes to complete.

8. Cutting and re-coupling train segments requires train crew members to dismount from the locomotive engine, walk to where the cut is to be made, and operate equipment necessary to perform the coupling or un-coupling operation. Crew members also have to set a sufficient number of handbrakes on that part of the train uncoupled from the engine(s). To complete the coupling process, employees must go between the ends of the cars and re-attach the air hoses that are part of [the] train's braking system.

9. Requiring employees to cut and reassemble train segments each time a train may block a grade crossing for more than ten minutes would also delay Norfolk Southern's train operations/ traffic because of the time involved in performing these maneuvers.

(*Id*. at 7-8.)

# Discussion and Decision

### *Summary Judgment Standard of Review*

We review decisions on summary judgment *de novo* and apply the same standard applied by the trial court. *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 439 (Ind. 2015). The movant must show the designated evidence raises no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

[6] Here, the trial court made findings and conclusions in support of its entry of summary judgment. We are not bound by such findings and conclusions, but they aid our review by providing reasons for the decision. *Allen Gray Ltd. P'ship IV v. Mumford*, 44 N.E.3d 1255, 1256 (Ind. Ct. App. 2015). We will affirm a summary judgment on any theory or basis found in the record. *Id.*

### *Indiana's Blocked-Crossing Statute*

[7] Indiana's Blocked-Crossing Statute states:

> It shall be unlawful for a railroad corporation to permit any train, railroad car or engine to obstruct public travel at a railroad-highway grade crossing for a period in excess of ten (10) minutes, except where such train, railroad car or engine cannot be moved by reason of circumstances over which the railroad corporation has no control.

Ind. Code § 8-6-7.5-1. In *State v. CSX Transp., Inc.*, we interpreted Indiana's Blocked-Crossing Statute:

> The statute clearly states that it is illegal to obstruct public travel, not to simply obstruct the railroad crossing. The plain meaning of this language indicates that there must be evidence that the public attempted to travel across the railroad crossing before a violation of this statute occurs. Moreover, this court has previously held that the elements of a violation of this statutory provision are: 1) obstruction of public travel, 2) at a railroad crossing, 3) for more than ten minutes. *Norfolk & Western Railway*

*Co. v. State*, 180 Ind.App. 185, 387 N.E.2d 1343, 1344 (1979), *reh. denied*, *trans. denied*.

673 N.E.2d 517, 519 (Ind. Ct. App. 1996).

[8] Here, the trial court concluded Indiana's Blocked Crossing Statute is preempted by the ICCTA and the FRSA. This issue of federal preemption of Indiana's Blocked-Crossing Statute is one of first impression. Our Indiana Supreme Court recently reiterated our standard of review when a party argues preemption:

> It has "long been settled" that a preemption analysis begins with the presumption that federal statutes do not preempt state law. *Bond v. United States*, —— U.S. ——, 134 S. Ct. 2077, 2088, 189 L.Ed.2d 1 (2014). The presumption against preemption comes from two concepts "central to the constitutional design" - the Supremacy Clause and federalism. *See Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 2500, 183 L.Ed.2d 351 (2012). Although the Supremacy Clause[3] gives Congress the power to preempt state law, federalism requires that we do not easily find preemption. *See id*. at 2501. In fact, we find preemption only if it is "the clear and manifest purpose of Congress." *Id*. [Appellants], then, must show that clear and manifest purpose in order to overcome the presumption against preemption. *Russ. Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 309 (7th Cir. 2010).

---

[3] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

Congress can preempt state law in three ways: express preemption, field preemption, and conflict preemption. *Basileh v. Alghusain*, 912 N.E.2d 814, 818 (Ind. 2009). Express preemption exists when Congress states the statute's preemptive effect. *Id.* Field preemption applies when Congress creates "exclusive federal regulation of the area." *Id.* And conflict preemption preempts a state law that conflicts with federal law. *Arizona*, 132 S. Ct. at 2501.

*Kennedy Tank & Mfg. Co., Inc. v. Emmert Indus. Corp.*, 67 N.E.3d 1025, 1028 (Ind. 2017) (footnote in original).

[9] Further, the United States Supreme Court has described when federal law preempts state law under the Supremacy Clause:

First, Congress can define explicitly the extent to which its enactments pre-empt state law. Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has emphasized: "Where . . . the field which Congress is said to have pre-empted" includes areas that have

"been traditionally occupied by the States," congressional intent to supersede state laws must be "'clear and manifest.'"

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*English v. Gen. Elec. Co.*, 496 U.S. 72, 78-9 (1990) (internal citations omitted, ellipses in original).[4]

## *ICCTA*

[10] The trial court found Indiana's Blocked-Crossing Statute is preempted by the ICCTA, which was enacted in 1996 "to standardize all economic regulation (and deregulation) of rail transportation under Federal law, without the optional delegation of administrative authority to State agencies to enforce Federal standards, as provided in the relevant provisions of the Staggers Rail Act." H.R. Rep. No. 104–311 (reprinted in 1995 U.S.C.C.A.N. 793, 807).

[11] The ICCTA's preemption clause clarifies the role of the Surface Transportation Board ("STB"), the relevant governing body of the ICCTA:

---

[4] Throughout the proceedings, most notably during the oral argument, Norfolk maintained Indiana's Blocked-Crossing Statute is expressly preempted by the ICCTA and the FRSA, and it has insisted on interpreting the trial court's order as an "all or nothing" declaration of express preemption. Therefore, we will not examine conflict preemption or field preemption.

(b)  The jurisdiction of the [STB] over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive.

> Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501.

When a statute contains an express preemption clause, "the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).  The State argues the ICCTA does not expressly preempt Indiana's Blocked-Crossing Statute: "Although the ICCTA provides remedies for violations of various rules, there are not remedies for obstruction of traffic. . . . ICCTA only accounts for the explicit remedies found within the act . . . [Therefore,] the silence as to obstruction of traffic bars facial preemption." (Br. of Appellant at 15.)  We agree.

[13]     The State relies on *Adrian & Blissfield R. Co. v. Village of Blissfield*, 550 F.3d 533 (6th Cir. 2008), in which the Sixth Circuit Court of Appeals explained the STB's test for determining preemption:

> First, state actions are "categorically" or "facially" preempted where they "would directly conflict with exclusive federal regulation of railroads." . . . *CSX Transp., Inc., STB Fin. Docket No. 34662*, 2005 WL 1024490, at *3 (S.T.B. May 3, 2005)). Courts and the STB have recognized "two broad categories of state and local actions" that are categorically preempted regardless of the context of the action: (1) "any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized" and (2) "state or local regulation of matters directly regulated by the Board-such as the construction, operation, and abandonment of rail lines; railroad mergers, line acquisitions, and other forms of consolidation; and railroad rates and service." *CSX Transp.*, 2005 WL 1024490, at *2 (citations and footnote omitted); *see also* [*New Orleans & Gulf Coast Ry. Co. v.*] *Barrois*, 533 F.3d [321,] 332 [(5th Cir. 2008)]; *Emerson* [*v. Kansas City S. Ry. Co.*], 503 F.3d [1126] 1130 [(10th Cir. 2007)]; *Green Mountain* [*R.R. Corp. v. Vermont*], 404 F.3d [638,] 642 [2d Cir. 2005)]. Because these categories of state regulation are "per se unreasonable interference with interstate commerce," "the preemption analysis is addressed not to the reasonableness of the particular state or local action, but rather to the act of regulation itself." *CSX Transp.*, 2005 WL 1024490, at *3; *see also Barrois*, 533 F.3d at 332; *Green Mountain*, 404 F.3d at 644. Second, those state actions that do not fall into one of these categories may be preempted as applied: "For state or local actions that are not facially preempted, the section 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad

transportation." *Barrois*, 533 F.3d at 332 (quoting *CSX Transp.*, 2005 WL 1024490, at *3).

As the Fifth Circuit recently noted, "the STB has clearly identified where routine crossing disputes, such as the one at issue in this case, fall in this scheme of ICCTA preemption." *Id.* "Routine crossing disputes," "despite the fact that they touch the tracks in some literal sense," "are not typically preempted." *Id.* at 332-33 (noting "that '[t]hese crossing disputes are typically resolved in state courts'" (quoting *Maumee & W. R.R. Corp. & RMW Ventures, LLC, STB Fin. Docket No. 34354*, 2004 WL 395835, at *2 (S.T.B. Mar. 3, 2004))). We agree that "[t]he STB's position with respect to these routine crossing cases is consistent with the historical, pre-ICCTA rule governing these crossing disputes." *Id.* at 333. As the [United States] Supreme Court explained,

> The care of grade crossings is peculiarly within the police power of the states, and, if it is seriously contended that the cost of this grade crossing is such as to interfere with or impair economical management of the railroad, this should be made clear. It was certainly not intended by the Transportation Act to take from the states or to thrust upon the Interstate Commerce Commission investigation into parochial matters like this, unless by reason of their effect on economical management and service, their general bearing is clear.

*Id.* (quoting *Lehigh Valley R.R. Co. v. Bd. of Pub. Util. Comm'rs*, 278 U.S. 24, 35, 49 S. Ct. 69, 73 L.Ed. 161 (1928)).

*Id.* at 540.

Further, in *Fayus Enterprises v. BNSF Ry. Co.*, 602 F.3d 444 (D.C. Cir. 2010), *reh'g en banc denied, cert. denied*, 562 U.S. 1108 (Dec. 13, 2010), the D.C. Circuit Court of Appeals reasoned, when examining another provision under the ICCTA:

> Plaintiffs correctly point out that the ICCTA does not preempt all state and local regulations. The circuits appear generally, for example, to find preemption of environmental regulations, or *similar exercises of police powers relating to public health or safety*, only when the state regulations are either discriminatory or unduly burdensome. *See, e.g., Adrian & Blissfield R.R. Co. v. Village of Blissfield*, 550 F.3d 533, 539 (6th Cir. 2008); *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 643-44 (2d Cir. 2005) (including risk of permitting delay in assessment of burden); *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252-55 (3d Cir. 2007); *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439 (5th Cir. 2001) (finding common law nuisance preempted); *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001); *cf. City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1030 (9th Cir. 1998) (seeming to apply a broader preemption rule). Several of the cases, in addressing these environmental regulations, note that the ICCTA "does not preempt only explicit economic regulation." *N.Y. Susquehanna & W. Ry. Corp.*, 500 F.3d at 252; *see also City of Auburn*, 154 F.3d at 1030 (similar). By implication, such cases recognize that the core of ICCTA preemption is "economic regulation," which we take to refer to regulation of the relationship before us here, that of shippers and carriers.

*Id.* at 451 (emphasis added).

The ICCTA does not include language regarding regulation of a blocked crossing for traffic regulation purposes. Without State action, railroads would be allowed to block major thoroughfares for an infinite amount of time because

the federal regulation is silent. Based on the holdings in *Fayus* and *Blissfield*, and cases cited therein as support, we hold Indiana's Blocked-Crossing Statute is not expressly preempted by the ICCTA, not only because there is no specific language in the ICCTA preempting the regulation of railroad crossings, but also because Indiana's Blocked-Crossing Statute is a permissible exercise of the State's "police powers relating to public health or safety." *Fayus*, 602 F.3d at 451.

## *FRSA*

[16] The trial court found Indiana's Blocked-Crossing Statute is also preempted by the FRSA. The State directs us to the FRSA preemption clause, which states:

> (a) National uniformity of regulation -
>
> (1) Laws, regulations, and orders related to railway safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order -

(A) is necessary to eliminate or reduce an essentially local safety or security hazard;

(B) is not incompatible with a law, regulation, or an order of the United States Government; and

(C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106. Congress enacted the FRSA to "promote safety in every area of railroad operations and reduce railroad related accidents and incidents." 49 U.S.C. § 20101.

[17]    In *State v. Wheeling & Lake Erie Ry. Co.*, 743 N.E.2d 513 (Ohio Ct. App. 2000), the Ohio Court of Appeals held Ohio's blocked-crossing law was not expressly preempted by the FRSA. The language of the statute is similar to that of the Indiana Blocked-Crossing Statute:

> No railroad company shall obstruct, or permit or cause to be obstructed a public street, road, or highway, by permitting a railroad car, locomotive, or other obstruction to remain upon or across it for longer than five minutes, to the hindrance or inconvenience of travelers or a person passing along or upon such street, road, or highway. No railroad company shall fail, at the end of each five minute period of obstruction of a public street, road, or highway, to cause such railroad car, locomotive, or other obstruction to be removed for sufficient time, not less than three minutes, to allow the passage of persons and vehicles waiting to cross.
>
> This section does not apply to obstruction of a public street, road, or highway by a continuously moving through train or caused by

circumstances wholly beyond the control of the railroad company, but does apply to other obstructions, including without limitation those caused by stopped trains and trains engaged in switching, loading, or unloading operations.

*Id.* at 514 (quoting Ohio Revised Code 5589.21). The Ohio Appeals Court interpreted the clause in the FRSA, 49 U.S.C. § 20106, which states "[a] State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject manner of the State requirement," and concluded the FRSA did not preempt the Ohio law because "[n]either the trial court nor appellee has indicated any federal regulation governing this issue, let alone demonstrated the 'clear and manifest purpose of Congress' to preempt local regulations on how long a stopped train can block an intersection." *Wheeling*, 743 N.E.2d at 514.

[18] We adopt the holding of *Wheeling* because of the similarity between the state statutes in question. As we concluded regarding the ICCTA *supra*, there is no language in the FRSA which explicitly pre-empts Indiana's Blocked Crossing Statute.

# Conclusion

[19] We hold Indiana's Blocked Crossing Statute is not expressly pre-empted by the ICCTA or the FRSA. In this narrow holding, we do not address conflict or field pre-emption because Norfolk refused to discuss their application. *See supra*

n.4. Accordingly, we reverse and remand for proceedings consistent with this opinion.

[20]    Reversed and remanded.


Brown, J., and Pyle, J., concur.